W. G. Harrington brought this suit against the Houston East West Texas Railroad Company to recover damages for injuries alleged to have been suffered by his wife while a passenger on one of defendant's trains and being due to the negligence of defendant *Page 389 
in failing to heat its coach, in failing to furnish her a reasonably safe and comfortable means of transfer from one of its trains to another at a point where a wreck had occurred and in failing to furnish her a reasonable opportunity to procure food during a journey from Nacogdoches to Dallas, lasting about twenty-two hours.
The defendant answered by general denial and special pleas of contributory negligence, the nature of which will be disclosed in their proper connection.
There was a verdict and judgment for $2,500 in favor of plaintiff, and the defendant company has appealed.
The facts are substantially as follows: On February 3, 1905, at 5:30 in the morning the plaintiff's wife purchased a ticket and took passage at Nacogdoches, Texas, on one of defendant's passenger trains destined for Dallas. The train proceeded on its way until it reached a point about 2 1/2 or 3 miles from Nacogdoches, where its further progress was obstructed by a wreck. The train was due at Dallas at 11:55 a. m. The weather was cold when plaintiff boarded the train that morning and she took such wraps as she thought she would need. She had with her a baby in arms and a suit case and box. When the train stopped at the wreck it remained at or near that point until five o'clock that afternoon. About noon the plaintiff having become hungry and impatient asked the conductor to back the train to Nacogdoches, that point being in sight from where the train then was. The conductor declined on the ground that he had orders to hold the train where it was. During the day the train operatives arranged for dinner for the passengers at a farm house two or three hundred yards from the train, but it was raining and sleeting so plaintiff being encumbered with her baby did not go. Nor did she request either the train operatives or any of the passengers to bring her food. She took no food with her on the journey as the train was due at Dallas before noon.
About five o'clock that evening the passengers were transferred from that train to one on the opposite side of the wreck in order that they might continue their journey in the direction of Dallas. It was about dark, the weather had become very cold and it was sleeting. In order to get to the Dallas train the passengers had to walk. The ground was wet and at some points the mud was over plaintiff's wife's shoes. As a consequence she got her feet very wet. Two of the passengers aided her in making the transfer, one carrying her baby, the other her baggage. Instead of making the transfer she could have returned to Nacogdoches as the train she left was backed to that point and this she knew would be done. When she decided to make the transfer she did not know what means the defendant had provided for the transfer and did not know that she would have to walk through mud and water deep enough to wet her feet.
When she got into the other coach she found, according to her testimony, that the fire had about died out and the coach was cold. She asked the conductor to have a fire made, but received no reply. Thereafter she asked the porter and he told her the coal was out, but they would get some when they reached Jacksonville. When they passed that point she again reminded the porter and was told that they had not had time to get the coal. She then spoke again to the conductor and he told her *Page 390 
the stove was "no good." She remained in the cold coach until they reached Dallas at three o'clock next morning and suffered much from cold, also from lack of food. She had to use her wraps to keep the child warm. The coach was old and the cold wind came through the ill-fitting windows. There is testimony tending to show that as a consequence of her exposure in the cold coach and her wet feet she contracted a severe rheumatism in her muscles and joints which has put her on crutches and rendered her a permanent sufferer and cripple.
On the question of opportunity to procure food at Athens, an eating point on defendant's line which the train reached that night about 10 o'clock, the proof shows that the eating house was about fifty yards from the train and that other passengers ate at that point. Plaintiff's wife did not go on account of the baby and the fact that it was raining, nor did she send for any food or request any one to bring her food.
The appellant undertakes to present many assignments of error. It is not necessary that we shall dispose of each of them in detail. Several of them, however, require extended notice.
The following portion of the court's charge is assailed as error:
"The defendant company is responsible to the plaintiff for an injury, such as here complained of, which his wife may have received, if its negligence, or the negligence of its agents or servants, to use the degree of care and caution above set forth, was the primary, direct and proximate cause of the injury, although there may have been negligence also on the part of the plaintiff's wife, unless it appears that under the circumstances of the case she could, by the exercise of ordinary care, have avoided the consequences of the negligence of the defendant or its agents, keeping in view the rule or standard hereinbefore laid down."
The objections urged are that it assumes the injuries to have been proven, that it is confusing, meaningless and unintelligible, and that it is erroneous in that it instructs the jury that the plaintiff may recover notwithstanding the plaintiff's wife may have also been guilty of negligence. It is certainly true that the meaning of the court is not clearly expressed and that the charge is easily susceptible of the construction that the plaintiff may recover notwithstanding the negligence of his wife. It was perhaps proper for the court under the facts to charge the jury that though the plaintiff's wife may have been negligent, yet if her want of care did not contribute to her injuries she might still recover. But the charge is not so framed and we think the assignment should be sustained.
There was evidence tending to show that the smoking coach and the colored coach were warm and comfortable and that a sleeper was attached to the train which was also warm. It was not shown that plaintiff's wife knew of the fact that there was a sleeping car attached to the train or that the other two coaches were warm. Nor that any one in answer to her complaints as to the cold car told her to go into other cars because they were warm or for any reason. The law forbade her to go into the negro coach and it is a matter of common knowledge that ladies are not expected to occupy the smoking car. Upon this state of facts the court withdrew from the jury the issue of contributory negligence on her part in failing to go into another coach. We are of opinion that *Page 391 
upon the record as it stands there was no error in this and the assignment presenting the point is overruled.
The court charged the jury in substance, at the request of plaintiff, that if the defendant was negligent either in failing to back the train to Nacogdoches in the first instance or otherwise providing food for plaintiff's wife, or in the matter of the transfer, or in the matter of the cold and uncomfortable car, and such negligence was the proximate cause of the injuries, if any, to find for plaintiff. Appellant here complains that it is but a repetition of the main charge upon these points. This objection is not tenable. The court had submitted the combined causes as a ground for recovery and the plaintiff by this charge sought to have the various causes submitted as distinct grounds of recovery. In view of another trial, however, we call attention to the fact that there is no evidence that lack of food caused the rheumatism which was the wife's principal injury. The recovery for lack of food under the facts and standing alone could only be for the consequent discomfort. No permanent evil consequence is even hinted at. It may be, however, that the lack of food for so many hours rendered her more susceptible to cold and if allegations as to the cold car are established may be considered by the jury in connection therewith.
The defendant requested a charge to the effect that if plaintiff by the exercise of care could have learned of the condition of the ground before she made the transfer then she can not recover for any of its consequences. The evidence is undisputed that it was about dark when the transfer was undertaken; that the plaintiff had not been over the ground and had no means of knowing in advance the condition of the ground or anything more than the state of the weather. She had no means of learning in advance that the company had failed to provide a dry means of transfer. We think the court charged correctly upon the point and did not err in refusing the requested charge.
With reference to the exclusion of testimony that there were two other ladies on the first coach, that plaintiff knew where they resided and had not called them as witnesses, the plaintiff being content to rely alone upon the testimony of his wife, we are of opinion that in view of the fact that the two ladies did not make the transfer it is perhaps immaterial; but as the failure to provide food to plaintiff during the day and the circumstances under which it was supplied generally are issues upon which there is some conflict, we are inclined to think the evidence should have been admitted for the reasons urged by appellant.
The defendant offered to prove by Dr. Graham (the physician who treated plaintiff's wife after she reached Dallas) that she consulted him as to the cause of her rheumatism. That he advised her it was not due to the hardships of her trip and advised her not to sue. On objection of plaintiff the evidence was excluded and defendant complains. The evidence was properly excluded. The doctor's opinion expressed to her was clearly hearsay. His opinion as a medical expert was admissible in the form of direct testimony from him and could derive no legitimate force from the fact that it had been previously expressed to her.
The court in charging upon the burden of proof added that "the greater number of witnesses does not of itself determine the preponderance of the evidence." In view of the fact that the judgment must be *Page 392 
reversed upon other grounds we do not determine whether under the facts of this case the charge complained of was harmful to appellant. Such comments, however, while sound in law, are likely to prove misleading and have been uniformly condemned. (St. Louis S.W. Ry. v. Smith, 2 Texas Ct. Rep., 823, and authorities cited.)
Evidence was offered by plaintiff and admitted over objection after the case was closed and argument begun. It was offered in view of certain positions taken in argument by counsel for defendant which could not well have been foreseen. We incline to the opinion that the court did not abuse his discretion in hearing the evidence. As this incident of the trial is not likely to be repeated we make no further comment.
In his concluding argument to the jury one of plaintiff's counsel, after commenting upon the fact that defendant's counsel had asked the plaintiff's wife and one other whether she had not recently been shopping without her crutches, and receiving a negative answer pursued the inquiry no further, proceeded to use the following language:
"I knew what Mrs. Harrington's answer would be, and I knew that he would not prove by any witnesses that she had not told the truth. I knew that, when she said she was lame and suffering, that no man could prove by a reputable witness to the contrary. Mr. Garrison made fun of her crutches, laughed at her lameness, made a comedy out of those medicine bottles, and tried to make you believe that she was putting on, and practicing a fraud upon the railroad company. Gentlemen, she is my neighbor; yes, she is my wife's neighbor. I wish you knew this woman as I know her. If you did, you couldn't be made to laugh at her distress; you could not be made to believe that she was shamming lameness, and that she was swearing a lie before this court and jury. You would then know, instead of being a sufferer in distress, that she administered to the suffering and distressed at the midnight hour. That those crippled feet were always swift to respond to the cry of distress. Do you believe that a woman who could keep house, do her own cooking, attend to her children, and take in sewing, and bake bread and sell it to help her husband, would be guilty of such a crime?"
The language was excepted to at the time and the court refused to interfere. The action of counsel and the court is here complained of as error, and we think the complaint well founded. The matter complained of was not argument, but testimony unsworn and inadmissible if offered in the due course of the trial. It was in its very nature prejudicial since it served in a way not allowable under the rules of evidence, and certainly not in argument, to bolster up the character of plaintiff's wife as a witness and to support her testimony. With the evidence sharply conflicting at every point this error alone will require a reversal of the judgment. The rules contemplate that counsel should confine his argument to matters within the record and counsel who desire a valid judgment should be careful to observe them.
The language complained of in the twenty-sixth assignment does not receive our approval, but it does not influence the disposition of this appeal. The same may be said of the language complained of in the twenty-seventh, twenty-eighth and twenty-ninth assignments. Counsel *Page 393 
should observe the rules governing argument and the proprieties of debate.
In describing the conduct of appellant's train operatives upon which the cause of action was predicated, it was referred to in the pleadings as "gross negligence and willful and indifferent conduct." No damages were asked upon such a theory and the trial court ignored the allegations as surplusage. There was no material error therefore in overruling the exceptions addressed to that feature of the petition.
With reference to the assignments addressed to the parts of the charge defining the duty of the defendant to give their passengers a reasonable opportunity to procure food, we are of opinion the court charged the jury inaccurately but upon a correct theory. It seems to us that without regard to the question of meals at regular eating stations it is the duty of the company to use due care to furnish opportunity to purchase food where the passengers are delayed by a wreck, especially if due to the company's fault. As an illustration of the justness of this rule take the plaintiff's case. His wife boarded defendant's train with a reasonable expectation of reaching her destination by noon according to defendant's own schedule. She was justified for this reason in failing to take food with her. When her train was delayed beyond the usual hour for meals it was the duty of the company to exercise the degree of care generally due to passengers to give her a reasonable opportunity to procure food, taking into consideration her sex and her actual environments. Sick and aged persons and delicate women, if their condition be known, are said to be entitled to greater consideration at the hands of the company than those able to care for themselves. (11 Law Rep. Ann., 367, note; 5 Ency. of Law, 538, note 564.) It will not do to hold that a reasonable provision for men would answer for women in such a case any more than to hold that a cripple who had been placed on a train for a short journey easily accomplished between meals could be ignored and allowed to suffer for food on account of a wreck and delay, on the ground that food was in reach of those of average physical condition. If the delay was the fault of the company it was a breach of its duty to carry promptly. It therefore devolved on the company to see that no consequences of injury or discomfort should flow to its passengers which the company might reasonably prevent, and hunger was one of these. On the duty to carry promptly see 5 Am. and Eng. Ency. of Law, 585.
On the other hand, a passenger can not recover upon this ground if it appears that she could by preferring a request either to the employes or fellow passengers have procured such food as she needed. Nor do we think the company would be required to provide against the peculiar environment of the individual passenger at regular eating stations. If one crippled or infirm undertakes a journey which he knows will be of such length as to extend beyond the meal hours he must provide himself with food for he also knows that he can not walk or safely get on and off a train unassisted. We are of opinion that at regular eating stations when the train is on time the company's duty is discharged when it exercises the proper care to furnish an opportunity to those in ordinary physical condition to procure food for themselves. The infirm must procure such food through others. It would not ordinarily be the duty of the company to convey it to them. *Page 394 
Recurring directly to the case at hand, if the delay was the fault of the company and the plaintiff's wife was not at fault in failing to procure food during the day at the point of delay, then the duty of the company remained undischarged. She was still hungry without her fault and the occasion for her hunger could not have been foreseen by her. Therefore, if by reason of her environment and the inclement weather she was justified in remaining on the train when it stopped at Athens for food, the company was not released by the mere fact that the food was within reasonable reach of the average passenger. But here also arose a duty on her part to exercise care, and if by so doing she could have procured food the company would not have been liable for her continued discomfort from that cause.
There is a remarkable paucity of decision upon the point, but we believe the rules we have announced come fairly within well recognized principles controlling the reciprocal duties of the parties under similar circumstances.
The other assignments are overruled without detailed discussion. For the errors indicated the judgment is reversed and the cause remanded.
Reversed and remanded.