ARTHUR G. APPEL, Defendant in Error, *vs.* THE CHICAGO
    CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 28, 1913.*

1. APPEALS AND ERRORS—*when an improper argument is ordi-
narily not ground for reversal.* Where objections made to im-
proper argument of counsel are sustained, counsel is corrected
and the jury are instructed to disregard the improper remarks, the
improper argument is ordinarily not ground for reversal; but up-
on a motion for a new trial the question still remains whether the
defeated party, in view of the whole record, has had a fair trial,
and this question is committed to the sound judicial discretion of
the trial court.

2. SAME—*in a clear case a reversal may be based upon im-
proper conduct of counsel.* In a clear case the Supreme Court
will reverse a judgment because of the improper conduct of coun-
sel, even though the trial court has sustained objections to the
improper statements, has rebuked counsel and directed the jury to
disregard the statements.

3. TRIAL—*counsel ought not to throw the weight of his char-
acter and standing in the scale in favor of his witnesses.* Any
inference to be fairly drawn from the evidence in the case tend-
ing to sustain or impeach the witnesses on either side is a legiti-
mate subject of argument to the jury, but counsel has no right
to throw the weight of his character and standing into the scale
in favor of his witnesses by personally vouching for them.

4. SAME—*counsel should not answer argument of opponent by
stating facts not in evidence.* Where counsel for the defendant
in a personal injury case, in discussing the plaintiff's witnesses
and their production from a common source, makes comments to
the jury and puts questions to them reflecting unfavorably upon
such witnesses, it is proper for the plaintiff's counsel to answer the
argument in so far as such answer is found in the evidence, but
he should not make statements of facts resting in his own knowl-
edge and not testified to under oath.

FARMER, J., dissenting.

WRIT OF ERROR to the Branch "D" Appellate Court for
the First District;—heard in that court on appeal from the
Circuit Court of Cook county; the Hon. KICKHAM SCAN-
LAN, Judge, presiding.

259 — 36

FRANKLIN B. HUSSEY, and CHARLES LEROY BROWN, (LEONARD A. BUSBY, of counsel,) for plaintiff in error.

LEO KORETZ, C. H. JOHNSON, and DANIEL BELASCO, (W. D. ELMER, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

A writ of *certiorari* was awarded to bring up the record of the Appellate Court for the First District, which affirmed a judgment for $10,000 recovered by the defendant in error against the plaintiff in error in the circuit court of Cook county.

Error has been assigned upon the giving of two instructions, but we do not regard the objections to them of substantial importance. The only other ground of complaint urged is the refusal of the court to grant a new trial because of improper conduct of the plaintiff's attorneys in the argument of the case to the jury.

The action was for personal injuries received by the plaintiff by being struck and run over by a cable train on State street, in the city of Chicago. The plaintiff was at the time about eleven years old and was in company with two other boys six and seven years old, respectively. The plaintiff's account of the occurrence is, that the three boys were going east on the south side of Twenty-fifth street on the way from the plaintiff's home, west of State street, to the lake, about half after five in the evening, to go swimming; that as they came to State street two coal wagons were going west on the south side of Twenty-fifth street, crossing State street, which prevented them from seeing the cable train, which was approaching at a fast rate of speed from the north without sounding the gong, and that just as the last wagon cleared the track the train appeared, rushing south. The two younger boys, who were in front, got over the track safely, but the plaintiff was struck by the south-east corner of the car, knocked down and run over,

and one of his legs was so crushed that it had to be ampu-
tated a few inches above the knee. This statement is amply
sustained by numerous witnesses produced on behalf of the
plaintiff. On the other hand, an almost equal number of
witnesses produced on behalf of the defendant by their tes-
timony amply sustain the claim of the defendant that the
accident did not occur at the crossing of Twenty-fifth and
State streets but in the middle of the block between Twenty-
fifth and Twenty-sixth streets; that the plaintiff, with a
bundle of newspapers under his arm, had jumped upon a
north-bound car at Twenty-sixth street while it was in mo-
tion,—"flipped" the car,—and in the middle of the block
had "flipped" off and run around the rear end of the car
toward the west and toward the south-bound track, where
he ran into the front end of the train coming from the north
and received his injuries. The date and the names of the
parties are the only circumstances which identify the oc-
currence testified to by the two sets of witnesses as the
same event. The sole question for determination was the
question of fact as to which was the true account, and in
the condition of the record the verdict of the jury is final
if the case was fairly submitted to them.

The question whether the plaintiff had a bundle of
newspapers under his arm was of some importance for its
bearing on the probability that he was going to the lake,
swimming. He testified that he was in the habit of de-
livering papers in the evening to customers of his father
but was not delivering any on the evening of the accident.
After some of the defendant's witnesses had testified that
the plaintiff had newspapers under his arm at the time of
the accident the plaintiff's father was called as a witness for
him in rebuttal, and an effort was made to prove by him a
list of the names of the customers to whom papers were de-
livered at that time and where they were delivered by the
plaintiff. The defendant's objection to this evidence was
sustained.

The defendant's attorney, in his argument to the jury, referred to some of plaintiff's witnesses as follows: "All these fellows are acquainted. Where do they come from? Joe LaMansky, Fritzie Schmidt, Fishman, Campbell? Every one you can trace right through. Who are the parties? Do they converge? Are they in different lines of business distant from one another? No. Interested or acquainted with one another? Yes." He also said: "If this is a framed-up defense, * * * if this is framed up and concocted in my office or the City Railway office, why didn't the other six see the papers? * * * Eight witnesses who saw them and saw him flipping those cars, running toward the car, saw the papers,—every one of the eight. * * * It isn't a question of sympathy; it is a question of even-handed justice at your hands. * * * I am sorry for that boy's losing his leg. I am sorry to see him tell such a story as this here. I am sorry to see boys come in here and try to bolster up a thing when they give no reason of abandoning their usual evening occupation of having newspapers with them * * * and going off swimming at dinner time or supper time. But I am sorry for the boy losing his leg. But that has got nothing to do with the evidence in this case as to how the accident happened."

In his closing argument the attorney for the plaintiff said: "The City Railroad Company has cut a boy's leg off, and the boy is a young boy, and he wants fifteen or twenty thousand dollars for it. He claims they are negligent. He files a lawsuit against them and asks them for money. Think of it! You know the street car company are so in the habit of getting the nickels right along that it is a hard proposition for them to give some back some time, and this boy is asking for it. And they find out, mind you, they find out that this boy has a newspaper route, and they find out that he has been in the habit of every evening, off and on, of delivering the papers down on Wentworth avenue and on LaSalle avenue, and through there,

and we had the list of the customers right here, and Hussey was so fair he wouldn't let you men see it.

Mr. Hussey: "I object to that statement.

The court: "He wouldn't let you see what?

Mr. Belasco: "That list of customers. He said he was so fair and he was so sorry for this man—this boy.

The court: "Mr. Belasco, the court ruled on that and the court ruled the evidence was incompetent, so you can't make that sort of argument without reflecting on the court.

Mr. Belasco: "Well, I didn't intend to do that.

The court: "The jury will disregard the remark."

Again, in the course of the argument of the plaintiff's attorney the following took place:

"Gentlemen, if this accident didn't happen at Twenty-fifth street, then myself and Mr. Baker and the twelve witnesses that testified in this case ought to be over on the north side. I oughtn't to practice law here any more. I haven't any right, because if this case was framed up I framed it. I talked to these witnesses. I found some of them myself. Mr. Baker found some of them himself. We went out there and we canvassed the neighborhood up and down and around—

Mr. Hussey: "Well, I object to that.

Mr. Belasco: "That is the evidence.

The court: "Don't go into that—as to what you did outside of the record.

Mr. Belasco: "No; all right.

The court: "The jury will disregard that.

Mr. Belasco: "But I say in this case,—I am not saying about anything else, Mr. Hussey, I am saying in this case. We all ought to belong over there, probably, if we had our just deserts. But I am talking about this case. I am talking about this case, men. That is all. There is no two ways about it. Either I took these two little boys,—and, mind you, won't you give me credit that if I trained these twelve witnesses to come in here and tell a damnable lie

without any scintilla of evidence to base it on,—that is, they either saw this accident the way they say they saw it, or they didn't see it,—don't you give me credit if I got these twelve witnesses and brought them in my office and trained them, that I couldn't do a better job than I have, one witness saying one thing and one saying another. * * * There is your fine bunch of witnesses—witnesses that you are asking this jury to turn this boy loose penniless. You are asking this jury to turn this boy loose without a cent. Men, the boy has had three trials. He has grown from a boy to a lad. This woman that saw this accident was a girl and she is now a mother, and they still keep this boy out of justice. As I say in this case, men, don't let them do it any more. Pay the boy for God's sake. Men, don't turn him loose any more. Two trials he has had. This is the third—

Mr. Hussey: "I object to that line of argument.

The court: "Yes.

Mr. Hussey: " 'Pay the boy for God's sake.'

Mr. Belasco: "Yes. Well, don't pay him for God's sake. Pay him for the boy's sake.

Mr. Hussey: "I object to that line of argument. It appeals to the sympathy of the jury.

The court: "Mr. Belasco, you must not make that sort of argument to the jury and you must direct your arguments to a logical examination of the facts in the case. And the jury must not be influenced by any appeals of that kind. They must stick right to the evidence and to the law, and to arguments of either counsel as are logical and based upon the evidence in the case."

There can be no doubt of the impropriety of the argument which has been set out. It cannot be justified. It held the defendant up to the jury as making technical objections and thus unfairly procuring the court to exclude evidence which would have thrown light upon the issue. It added the weight of the character and standing of the coun-

sel for the plaintiff to the credibility of his witnesses, and it appealed to the emotions and prejudice of the jury in favor of the injured and penniless boy against the defendant, which through three trials and years of delay has kept him out of justice. The court promptly sustained the objections made to the argument, and no complaint is made of the action of the court in that regard.

Many cases have been cited in which courts have reversed judgments because of misconduct of counsel in the argument of the case and many cases in which they have declined to do so. We shall not undertake to review them. It is true that it is the action of the court, only, which is subject to review in appellate tribunals and that misconduct of counsel not objected to cannot be made the ground of reversal. The improper argument or other misconduct complained of must be brought to the attention of the court and a ruling of the court either made or refused before the question can arise in an appellate tribunal. Where objections made to improper argument are sustained, counsel is corrected and the jury are instructed to disregard it, the improper argument cannot usually be made the basis of reversal. But upon a motion for a new trial the question still remains whether the defeated party, in view of the whole record, has had a fair trial, and this question is committed to the discretion of the trial court,—not to its absolute discretion but to its judicial discretion. As was said in the case of *West Chicago Street Railroad Co.* v. *Annis,* 165 Ill. 475, it is "a matter resting in the sound discretion of the trial judge to say, under all the circumstances of the case and in view of the counter-remarks which may be made and the temper and character of the jury, whether a new trial should be granted or not, and unless it satisfactorily appears from the record that the trial court has abused its discretion in this regard, courts of review cannot interfere." In a clear case, however, this court will reverse a judgment because of the improper conduct of counsel, and

has reversed judgments because of prejudicial statements of counsel even though the trial court has sustained objections to such statements, rebuked counsel and directed the jury to disregard the statements. (*Wabash Railroad Co.* v. *Billings,* 212 Ill. 37; *Chicago Union Traction Co.* v. *Lauth,* 216 id. 176.) The rule in this State must be regarded as settled that misconduct of counsel of the character mentioned is sufficient cause for reversing a judgment, unless it can be seen that it did not result in injury to the defeated party. The questions to be determined are, therefore, whether the improper argument was of such a character as was likely to prejudice the defendant, and if so, was the verdict so clearly right that a new trial ought not to be granted because of such prejudicial argument.

The case was manifestly not one-sided upon the evidence. There was abundant testimony to sustain a verdict for either party. The case depended absolutely upon the credibility of the witnesses. It was essential to a fair trial that the issue should be determined by an impartial jury, solely upon the evidence in the case, without any appeal to passion or prejudice. The allusion to the list of customers which was excluded was an argument that the defendant's attorney was unfair in keeping proper evidence out of the case. Whether the evidence was important or not, counsel gave it importance by his argument and sought to draw an unjust inference from the defendant's objection to it. The allusion to the penniless condition of the boy, to the three trials, the delay and the keeping of the boy out of justice, were appeals to the sympathy of the jury which were not warranted by the evidence. This was the third trial and the jury knew it, and there had been delay, but, so far as the record shows, the defendant was not responsible for it. It cannot be regarded as unfairly keeping a plaintiff out of justice for a defendant in good faith to resist his claim. Counsel for the defendant in error argue that it was not said that the boy was penniless but that upon such evidence

the jury were asked to turn him loose penniless, without a cent, and that the statement was a comment on the character of the evidence. The language may be so understood and the defendant in error is entitled to the benefit of that construction, but this does not apply to the other statements in this part of the argument.

Whatever may be thought of those parts of the argument which have thus far been considered there can be only one view of the remaining part. The statements made in regard to the canvassing of the neighborhood for witnesses and finding them, if they could have been admissible at all, could have been so only under oath and as the testimony of witnesses, and those statements were eminently prejudicial. The vital question in the case was the credibility of the two sets of witnesses. Any inference to be drawn from the evidence in the case tending to sustain or impeach the witnesses on either side was a legitimate subject of argument, but counsel had no right to throw the weight of his and his associate's character and standing into the scale in favor of the witnesses on his side. By his language he vouched personally for his witnesses. His words might well be understood as a personal declaration, of his own knowledge, that there was no conspiracy among the witnesses. He declared that he had canvassed the neighborhood, talked with the witnesses, and if the case was framed up he framed it, saying that if the accident did not happen at Twenty-fifth street he and his associate, and the twelve witnesses who testified to this case, ought to be over on the north side,—meaning, as the jury would understand, in the county jail. In a case depending upon the credibility of witnesses, what doubt can there be as to the prejudicial effect of such statements of counsel? It was said in *Gutzman* v. *Clancy*, 114 Wis. 589: "That solemn statements of fact, not by way of argument and deduction from the evidence but as of the counsel's own knowledge, are likely to have weight with juries cannot be doubted. The respectability and standing

of counsel only serve to enhance the peril. That such con-
duct necessitates reversal, unless absence of prejudice clearly
appears, has been often decided." Other cases in which
statements by counsel of their personal actions or knowl-
edge or experience have been held error for which judg-
ment should be reversed, are *Louisville and Nashville Rail-
road Co.* v. *Hull,* 113 Ky. 561; *Texas and New Orleans
Railroad Co.* v. *Harrington,* 44 Tex. Civ. App. 386; *Smith*
v. *Western Union Telegraph Co.* 50 Mo. App. 620; *Hil-
liker* v. *Farr,* 149 Mich. 444.

Counsel for the defendant in error argue that these
statements were fair discussion of facts brought out by the
cross-examination of the defendant's witnesses and in an-
swer to the argument of counsel for the plaintiff in error
in discussing the plaintiff's witnesses and their production
from a common source, in which he said: "All these fel-
lows are acquainted. Where do they come from? Who
are the parties? Do they converge?" It was proper argu-
ment for the plaintiff in error to discuss these questions,
and it was proper for counsel for the defendant in error to
answer them so far as such answer was found in the evi-
dence, but it was not proper to answer them, in argument,
from his own knowledge of facts not testified to under oath.

It is suggested that as no claim is made that the dam-
ages are excessive there was no prejudice to the defendant.
The improper argument was not directed to the amount of
the damages and did not concern their amount more than
it concerned every other feature of the case. If the argu-
ment prejudiced the jury against the defendant, that preju-
dice was as likely to affect their judgment in regard to the
defendant's liability as in regard to the amount of the lia-
bility. If the argument affected the credibility of the wit-
nesses it could not fail to affect the question of liability,
regardless of amount.

The circuit court should have allowed the defendant's
motion for a new trial.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court for a new trial.    *Reversed and remanded.*

Mr. JUSTICE FARMER, dissenting:

I do not disagree with the court that plaintiff's counsel made some statements in his argument to the jury which were improper, but I do not agree that any or all of such statements justify a reversal of the judgment in this case. The court holds certain language appealed to the emotions and prejudice of the jury. I do not place any such construction upon the language, nor do I think it a reasonable inference that the jury understood the language in the sense given it by the court. The opinion concedes it might be understood in a different sense from that attributed to it by the court. The reversal of the judgment is based principally, if not solely, upon the second part of the argument set out in the opinion, in which plaintiff's counsel said, in substance, that if the accident did not happen at Twenty-fifth street, he, his associate and their witnesses ought to be over on the north side; that if the case was framed up he framed it up; that he and his associate looked up and talked with the witnesses; that they canvassed the neighborhood up and down. This, the court holds, was so prejudicial as to require a reversal of the judgment. I agree that this argument was not legitimate because not based upon any testimony, but I do not attribute to it such influence and effect upon the jury as is given it by the court. Each of the three objections made to the argument of plaintiff's counsel by counsel for defendant was sustained, the jury were told to disregard the remarks, and twice counsel for plaintiff was rebuked by the court, and I think it more reasonable and in harmony with common experience that the action of the court fully offset and overcame any influence such statements might otherwise have had on the minds of the jury.

The general rule is, that misconduct of counsel on the
trial can only be reviewed upon exceptions taken to the
action of the trial judge in ruling upon objections made to
such misconduct, or in failing to rule when requested to do
so, and preserving exceptions to such rulings or failure to
rule. (*Lipsey* v. *People,* 227 Ill. 364; *McCann* v. *People,*
226 id. 562; *City of Salem* v. *Webster,* 192 id. 369.) Here
no exceptions were or could be preserved to the rulings of
the court, for the reason that the rulings were in favor of
the party making the objection. In some cases, however,
it has been held that conduct of counsel was so bad and
prejudicial that the rulings of the court did not remove the
prejudice or cure the error. In *Chicago Union Traction
Co.* v. *Lauth,* 216 Ill. 176, it was said: "The rule is, that
although the trial court may have done its full duty in its
supervision of the trial and in sustaining objections, a new
trial should be granted where it appears that the abuse of
argument has worked an injustice to one of the parties."
In that case the language of counsel was extremely abusive
of defendant. The Appellate Court required a *remittitur*
of $5000 from the judgment in favor of plaintiff and af-
firmed the judgment for $10,000. This court held that the
action of the Appellate Court in requiring a *remittitur* was
conclusive that the verdict was far in excess of the actual
damages.

In *Chicago and Alton Railroad Co.* v. *Scott,* 232 Ill.
419, which was a condemnation suit brought by the railroad
company, counsel for the land owner indulged in highly in-
flammatory language against the railroad company,—lan-
guage highly calculated to prejudice, and apparently used
for the purpose of prejudicing, the jury. The trial court
sustained an objection to the argument, but the attorney
continued in the same line without even a rebuke from the
court, and it was held that the perfunctory sustaining of
the objections, under the circumstances, did not cure the
error.

*McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, was an action for personal injuries. Counsel for plaintiff in his opening statement stated plaintiff was thirty-three years of age and had a wife and five children. This was objected to by defendant and the objection sustained. In the cross-examination of one of defendant's witnesses the plaintiff's counsel asked a question the purpose of which was to indicate to the jury that defendant was insured against liability for accidents and that the insurance company would have to respond for any judgment plaintiff obtained. There was judgment for the plaintiff, from which the Appellate Court required a *remittitur* of $2000. This court held that the effect of the statement of counsel that plaintiff had a wife and five children could not be removed by the ruling of the court in sustaining an objection to it, and that the effort to give the jury to understand that defendant was insured was also very prejudicial to defendant. The fact that the judgment was for $2000 more than the Appellate Court would approve, warranted the belief that the verdict of the jury was excessive.

In *Peoria, Bloomington and Champaign Traction Co.* v. *Vance,* 234 Ill. 36, counsel for a land owner in a condemnation proceeding, in his argument, indulged in improper and highly prejudicial remarks about defendant. Numerous objections were made and overruled by the court. There had been a previous trial of the case, and in his argument counsel told the jury what the verdict was in the former trial. Objection to this was sustained. The judgment was reversed because of the action of the court in overruling objections to improper argument and also because of the statement of counsel of what the verdict was in the former trial, which, it was held, placed the fact before the jury, so that sustaining objections to it after it was stated could not take it from the jury.

Some other cases of like character might be cited, but the above sufficiently typify the cases where it has been held

by this court that sustaining objections to improper statements in argument would not cure the error.

*City of Chicago* v. *Leseth,* 142 Ill. 642, was an action by plaintiff to recover damages for an injury claimed to have been received by reason of a defective sidewalk.   During the cross-examination of one of the defendant's witnesses plaintiff's counsel stated he was told that other accidents had happened there.   Objection to this remark was sustained by the court and counsel was told it was highly improper for him to make any such statement.   This court said it would not presume, in view of the action of the court, that the jury would be prejudiced by the statement. The court said it was natural that attorneys, however cautious and fair they intended to be, should sometimes make improper remarks in the presence of the jury, but that injurious effects of such remarks could generally be corrected by the court at once or by instructions; that it is only in cases where counsel persist in attempting to mislead and prejudice the jury improperly and where the court has refused to interfere, or where a reviewing court can say that, notwithstanding the efforts of the trial judge to remove the prejudicial effects of the misconduct, an injury may have resulted to the opposite party, that a judgment will be reversed on the ground, alone, of misconduct.

In *Joliet Street Railway Co.* v. *Call,* 143 Ill. 177, plaintiff's counsel, in his argument to the jury, attacked in very severe language two of defendant's witnesses and inquired why one of them was not present at the time.   He answered his own inquiry by stating he had committed larceny the night before and was locked up in the calaboose.   This was wholly outside the record.   This court said the language was highly improper, but as the trial court promptly rebuked counsel and told the jury to disregard the statement the error was cured.   The court said a verdict should not be set aside on account of misconduct of counsel unless it

is apparent that, notwithstanding the action of the trial court, injury may have resulted to the adverse party.

In *Monmouth Mining and Manf. Co.* v. *Erling,* 148 Ill. 521, plaintiff's counsel, in his closing argument to the jury, referred to the financial condition of the parties to the suit. Objection to this line of argument was sustained by the court and we held the improper conduct afforded no ground for reversal.

In *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Kinnare,* 203 Ill. 388, plaintiff's counsel, in addressing the jury, did not confine himself to a discussion of the evidence but devoted his remarks largely to an attack upon defendant and his counsel concerning the manner of the defense and objections it had made to testimony. This court said the conduct of counsel was not well regulated by the court, but as objections were sustained to the remarks complained of, the improper argument did not afford sufficient ground for reversal of the judgment.

In *Deel* v. *Heiligenstein,* 244 Ill. 239, counsel stated in his argument that he didn't claim any credit for representing the cause of a weak woman or of an invalid child; that he was simply doing his duty. His client was a widow and had a child. On objection being made to the statement it was sustained by the court. This court held the use of such language was highly improper and calculated to arouse the passions and prejudice of the jury, but that in view of the ruling of the court, considered together with the amount of damages awarded, it could not be said that the jury were influenced, in arriving at their verdict, by the statement. The court said: "Generally, in civil cases, it is only when the amount of the verdict of the jury is large or clearly excessive that such remarks of counsel will require a reversal."

Many other cases similar in principle will be found in our Reports. An extended discussion of the subject when improper conduct of counsel will require a reversal of the

judgment will be found in chapter 30 of Thompson on Trials, together with a large number of cases collected by the author.

I wish to emphasize that I not only do not approve of the argument of counsel complained of, but that of portions of it I most emphatically disapprove, but however I may disapprove of the argument, a reversal would not be justified on that ground, alone. A reversal is only warranted in such case when it is apparent that the opposite party might reasonably have been prejudiced as a result of such misconduct. In the first place, the court did all in its power to prevent any prejudice resulting from the argument, and I think, considering the character of the argument and the action of the court, that if it is ever possible in any case to say the action and rulings cured the error of misconduct of counsel they did so in this case. The court not only rebuked counsel at the time the remarks were made and told the jury to disregard them, but at the close of the evidence instructed the jury that sympathy for the disability of plaintiff should have no influence upon them in determining whether defendant was liable, or if liable, in determining the amount of their verdict; that the question of defendant's liability was to be determined from the evidence, under the instructions of the court; that the jury must decide upon the evidence and not upon statements of counsel outside of or unsupported by evidence; that the verdict must be governed by the law, alone; that it was the province of the court to decide upon the admissibility of the evidence, and that all reference to the evidence, in the instructions, meant only evidence that was admitted on the trial; that evidence offered but excluded must not receive any consideration from the jury in deciding the case; that evidence heard but stricken out by the court must be totally ignored and treated as if it had not been heard. It has not been, and could not reasonably be, claimed that if defendant was liable the verdict was excessive. There is no in-

dication from the size of the verdict that the minds of the jury were inflamed or their prejudice aroused against defendant. The trial court was in a better position to determine whether the improper conduct complained of prejudiced defendant than is a reviewing court. If the trial court was satisfied that defendant was prejudiced by the conduct of counsel complained of, it should have set aside the verdict and awarded a new trial. That it did not do so is not conclusive on this court but is entitled to weight in determining the question here. In *North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486, in discussing this subject this court said, in substance, that when the record bears the official sanction of the trial judge every reasonable presumption will be indulged that he has properly performed his duty and exercised the discretion vested in him and has permitted no misconduct of counsel to materially prejudice the opposite party, unless such misconduct and its prejudicial nature are clearly shown by the record. In *Chicago City Railway Co.* v. *Creech,* 207 Ill. 400, this court said: "Under the second point it is insisted that, in the argument to the jury, counsel for appellee went outside the record and commented on matters upon which there was no evidence, and made unwarranted appeals to class prejudice for the purpose of prejudicing the jury. We have held that in the argument of cases to juries, attorneys must be allowed to make reasonable comment upon the evidence and upon the conduct of witnesses giving their testimony; that the interest of public justice requires that counsel should not be subjected to any unreasonable restraint in this regard; that the matter is one which must be left largely to the sound discretion of the presiding judge, it being for him to say, under all the circumstances of the case and in view of the remarks preceding the argument objected to and the temper and character of the jury, whether or not a new trial should be granted for the misconduct of counsel by way of improper argument to the jury."

259 – 37

It is a proper matter of consideration that this case has had two previous trials. There was a disagreement of the jury on the first trial. The second trial was before the same judge who presided at the last trial and there was a verdict in favor of the plaintiff, which was set aside for reasons not appearing in the record. Whether plaintiff was entitled to a verdict or not depended upon the weight and credit to be given to the testimony of the witnesses for the respective parties to the case. That was a question for the jury. They adopted the view of the witnesses for plaintiff, and that action has been approved by the trial and Appellate Courts. This court cannot say that was unauthorized, nor does it appear that the action of the jury in arriving at their verdict might reasonably have been the result of the improper conduct of counsel complained of, in argument. I think the judgment should have been affirmed.