## Claude Bennett, Appellee, v. W. M. McAllister Company, Appellant.

### Gen. No. 7,644.

1. NEGLIGENCE—*sufficiency of evidence to require submission to jury of issue of contributory negligence in licensee's action for injury by fall into elevator well on defendant's premises.* Evidence in an action for injury to a drayman by a fall into the elevator well at defendant's place of business while upon the premises for the purpose of delivering goods, held to require submission to the jury of an issue as to the plaintiff's alleged contributory negligence, precluding the direction of a verdict for defendant.

2. NEGLIGENCE—*inapplicability of doctrine of assumed risk in negligence action wherein parties did not bear relation of master and servant.* Where the relation of master and servant did not exist between parties to a negligence action, the doctrine of assumed risk had no application.

3. HARMLESS AND PREJUDICIAL ERROR—*refusal to strike answer of witness involving conclusion where jury would necessarily have reached same conclusion.* In an action for injury by a fall into an elevator well, where plaintiff, after testifying that he found the safety gate up and the door to the shaft partly open, was asked what he then did, it was not reversible error to refuse to strike his answer as follows: "I stopped and looked a second or two and I thought I saw the elevator," although the answer was in part a conclusion since the jury must necessarily have reached the same conclusion.

4. DAMAGES—*vulnerability of instruction on damages to attack as suggesting right of plaintiff to recover or as intimating damages awarded need not be based upon evidence.* An instruction on damages in an action for negligence held not open to criticism as suggesting that the plaintiff was entitled to recover damages, nor as intimating that the damages awarded need not be based upon the evidence.

5. INSTRUCTIONS—*discretion of trial court as to giving or refusal of cautionary instructions.* The refusal of the court to give a requested cautionary instruction is not reversible error, the giving or refusal of such instructions resting in the sound discretion of the court.

6. HARMLESS AND PREJUDICIAL ERROR—*inadvertent misstatements of evidence by counsel acknowledged and corrected when attention*

*directed thereto.* Alleged improper remarks of counsel consisting of misstatements of the evidence not intentionally made to mislead or prejudice the jury held not prejudicial error, such misstatements having been acknowledged and corrected when counsel's attention was called to them.

7. NEGLIGENCE—*sufficiency of evidence in action by licensee for injury by fall into elevator well on defendant's premises to support verdict for plaintiff as against motion for new trial.* Verdict for plaintiff in an action for injury to a licensee upon defendant's premises by falling into an elevator well held not so manifestly against the weight of the evidence as to render the refusal of a new trial error.

8. DAMAGES—*judgment of $2,393 for leg fracture as excessive.* A judgment for $2,393 for negligence resulting in a fractured leg, in consequence of which plaintiff was incapacitated for sixteen months and the injured leg was permanently shortened, held not excessive.

Appeal by defendant from the Circuit Court of DeKalb county; the Hon. WILLIAM J. FULTON, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed July 27, 1926. Rehearing denied October 7, 1926.

SMITH & BROWER, for appellant.

JAMES W. CLIFFE and HARVEY GUNSUL, for appellee; OLNEY C. ALLEN, of counsel.

MR. JUSTICE JETT delivered the opinion of the court.

This is an action of trespass upon the case, brought by Claude Bennett, appellee, against W. M. McAllister Company, appellant, in the circuit court of DeKalb county, to recover damages for an injury sustained by him as the result of a fall into an elevator shaft situated in the store of the appellant.

For convenience, appellee will be called, plaintiff, and appellant, defendant.

The amended declaration consists of five counts. In substance it is charged that the defendant kept, maintained and managed a certain elevator in its store, used for the purpose of hoisting and lowering dry goods and merchandise in connection therewith, and

that the defendant's servants and agents had the care and management and were in control and operating said elevator on January 18, 1924, but that the defendant, not minding or regarding its duty, left unguarded and unprotected the door entering said elevator on the first floor of the store, when the platform of said elevator was then and there removed and hoisted to the second floor of said building by the agents and servants of the defendant; that the defendant gave no notice of the dangerous condition of said elevator and that no light was burning to disclose the dangerous pitfall beneath the elevator and that while plaintiff, who was in the exercise of his duty delivering freight to the defendant, upon said elevator, and under the direction of said defendant, and while in the exercise of due care and diligence for his own safety, and not knowing the dangerous condition of said elevator, entered said elevator on the first floor and fell into the pit about 10 feet below and his leg was broken.

In some of the counts, it is alleged that it was the duty of the defendant to use ordinary care to maintain and keep the said elevator in a proper and reasonably safe condition and to keep all hatchways, elevator shafts and elevator wells in said store building, secured, inclosed or otherwise safely protected, in order to safeguard and secure all persons entering said elevator on the first floor against injury; that plaintiff entered said elevator with said freight and fell into the pit and was thereby injured and damaged.

To the amended declaration, the defendant pleaded the general issue. A trial before a jury resulted in a verdict for the plaintiff and his damages were fixed at $2,393. Judgment was rendered on the verdict for said sum and the defendant prosecuted this appeal. A number of reasons are assigned and argued by the defendant for a reversal of the judgment.

The chief point urged by the defendant is that the trial court erred in refusing to direct a verdict in its favor. This necessarily requires an examination of the testimony on the part of the plaintiff, and the application of the rule arising out of the facts.

The evidence shows that the plaintiff, a drayman, while delivering freight to the defendant's place of business, at about eight o'clock in the morning, on a snowy day, under an oral arrangement to haul the same, at so much a load or package, and deliver it upon the elevator, with the location and operation of which he was familiar, stepped into the open and unguarded elevator shaft and fell to the bottom, sustaining an injury, where the defendant, for a considerable time past, had equipped the elevator with a safety gate, which was used to bar the entrance when the elevator was on some other floor, and which when uplifted with the door open indicated that it was ready for use; that at the time in question, the plaintiff carried a box weighing about 70 pounds from his truck to the outside elevator door of the defendant's store, which he found locked and thereupon set the box down upon the outside and entered the building through another door, after which he crossed about six feet to the west or inside door of the shaft which leads to the elevator, for the purpose of entering the elevator and unlocking the outside door, so he could place the box upon it; that he observed that the safety gate was up and the elevator door partly open, whereupon he stopped a moment or two and looked, and thinking he saw the elevator where it should have been, stepped into the shaft, the elevator being at that time on an upper floor, where an employee of the defendant company had taken it on the morning in question; that appellant's president and two other witnesses testified that when they picked plaintiff up, the former said to his employee, Hart, "Francis, haven't I told you to

keep that gate down?" Whereupon Hart said, "It was down," and plaintiff said, "Yes, the gate was down, I raised it and walked in," which plaintiff denied having said; that according to the testimony of the plaintiff, the part of the building where the elevator was located was dark, while the witnesses for the defendant testified that there was sufficient light for anyone to have discovered the fact that the elevator was not at that floor.

The defendant owed the duty to the plaintiff of exercising ordinary care to keep the elevator in a reasonably safe condition. The plaintiff being upon the defendant's premises by implied invitation it was its duty to exercise ordinary care, to have said premises, at the time in question, in a reasonably safe condition, so as not to expose him to unnecessary danger. *Pauckner v. Wakem*, 231 Ill. 276.

It was therefore required of the defendant to keep its elevator in a reasonably safe condition so that the plaintiff, without exposing himself to unnecessary danger, could deliver freight upon it. Having equipped it with a safety gate, indicating when it was raised (upwards) that the elevator was at the landing, it was not in a reasonably safe condition at the time in question, because, though the gate was up, the elevator was elsewhere, thereby exposing the plaintiff to the danger naturally resulting from assuming, as he had the right to do, that the elevator was there ready for use.

It is urged at length that the plaintiff was guilty of contributory negligence and that by reason thereof he received the injury of which he now complains. As to whether or not a plaintiff is guilty of contributory negligence in a given case is usually a question of fact for the jury, and the court can only say, as a matter of law, a plaintiff has been guilty of such contributory negligence as to defeat a recovery, when the facts are

not in dispute and the legal conclusions to be drawn from the admitted facts are so clear that all reasonable men, from a consideration thereof, must reach the conclusion that the plaintiff was guilty of contributory negligence. *Shoninger Co. v. Mann,* 219 Ill. 242.

The defendant recites in its statement the following facts: "On the day in question, the plaintiff was delivering his freight with a Ford truck. He carried the box weighing about seventy pounds from his truck, standing on Somonauk Street, to the outside elevator door of the defendant's store. He found the door locked and set the box down on the outside. He then went about six feet west on the sidewalk into the door which leads into the store. This door was unlocked but was closed. He opened it and stepped inside. When he got inside of the door, he crossed about six feet to the west door of the elevator shaft which leads to the elevator." Then the defendant says: "From this point on until the plaintiff was discovered at the bottom of the shaft, there is a sharp conflict between the testimony of the plaintiff and the defendant."

The sharp conflict, as is conceded by the defendant, covered an exceedingly important period of time in this particular transaction. It covered the period from the time the plaintiff crossed to the west door of the elevator shaft, which leads to the elevator, until he was found at the bottom thereof.

The rule being that the court can only say, as a matter of law, a plaintiff has been guilty of contributory negligence when the facts are not in dispute, therefore, the trial court could not have properly directed a verdict for the defendant because the vital facts were in sharp conflict. This was peculiarly a case for a jury, because of the conflict in the testimony on the vital and important question in the case.

It will be remembered that the plaintiff was familiar with the elevator and its location and knew about the safety gate and what it indicated when raised or lowered.

That the plaintiff had the right to assume that he would not be exposed to danger by the failure of the defendant or its servants to have the elevator at the floor in question when the gate was raised, and need not have anticipated negligence in this respect, finds support in *O'Rourke v. Sproul,* 241 Ill. 576, where the plaintiff was engaged in the construction of a building and was injured when the scaffold was removed in such a manner as to throw a timber upon him. The court at page 580 said: ''It is insisted that it was error to refuse the peremptory instruction to find for the defendant because the appellee was guilty of contributory negligence. The appellee was not bound to anticipate negligence on the part of those engaged in taking down the scaffold. It was a question for the jury whether appellee had any reason to anticipate danger to himself in the absence of negligence on the part of appellant's servants.''

Furthermore, in volume 29 of Cyc. p. 516, the following rule is announced: ''The general rule is that every person has a right to presume that every other person will perform his duty and obey the law, and in the absence of reasonable ground to think otherwise it is not negligence to assume that he is not exposed to danger which can come to him only from violation of law or duty to such other person. Hence failure to anticipate defendant's negligence does not amount to contributory negligence.''

In *Carey v. Arlington Mills,* 148 Mass. 338, 19 N. E. 525, the plaintiff, a 15-year-old boy, received injuries by falling down an elevator well, it appearing from his testimony that while he had been long employed by the defendant and understood the management of elevators, he had worked but three nights at

the elevator in question, which had self-closing
hatches, which had been out of order for some days,
and had been kept open for that reason, though plain-
tiff did not know it, and relying on the hatch being
open, he erroneously supposed the elevator to be at
that floor and pushed a truck rapidly through the
hatch in order to get it over any inequality that might
exist between the floor of the room and the elevator
floor, without looking for the elevator, the light not
shining in the elevator well, so as to make its absence
noticeable. It was held that it was error to direct a
verdict for the defendant on the ground of plaintiff's
contributory negligence, the court saying: "We think
that there was evidence for the jury that the plaintiff
knew the manner in which the hatches worked, and
did not know that they were not in working order at
the time of the accident; that he saw one of them up
against the wall, and knew that they were open, and
inferred from this that the elevator was at the floor
of the combing room; and that, relying upon this, he
ran the truck rapidly in through the doorway of the
elevator well, and fell through the hole. If he did not
know that the hatches were out of order, *it was rea-
sonable that he should rely, to some extent, upon the
fact that they were open; because, if in working or-
der, they would not be open unless some part of the
elevator was in the hold.*"

In *Wright v. Perry,* 188 Mass. 268, 74 N. E. 328, the
plaintiff was a master teamster and part of his regu-
lar business for several years had been to take goods
to and from the Linen Thread Company, which occu-
pied the basement and first floor of the premises in
question. On the day of the accident he went with
two of his teamsters to deliver a load of goods. One
truck load of the goods was unloaded from the truck
across the platform by the teamsters into the elevator,
plaintiff standing by and looking on. The plaintiff
then went for a second load, came back with it and

noticed a case of paper for another tenant in the building lying across the platform. He stepped on the platform and started to move the box of paper. One of his feet caught in a hole in the platform and he slipped. He stepped back with his other foot, supposing the elevator was in position for use, and fell into the elevator well. There was evidence that originally the elevator had closed with a sliding door. Some months before the accident this sliding door had been removed and a gate put in. This gate was a secondhand one and there was evidence that the automatic arrangement did not work well. Sometimes it would come down when the elevator went up and sometimes it would not. In holding that the question of whether or not the plaintiff was in the exercise of due care was for the jury, the court said: "It is argued that he ought to have ascertained whether the elevator was in place before attempting to remove the case of paper, but he testified that at the time he saw this case he 'noticed that the elevator gate was up, and in such position that the elevator ought to have been there.' It is also in evidence that it was somewhat dark in there. Under all the circumstances of the case, we cannot say, as a matter of law, that the plaintiff was not in the exercise of due care. *The plaintiff had a right to rely on the fact that the elevator gate was up.*"

In *Pauckner v. Wakem, supra,* the plaintiff went to defendant's warehouse to obtain goods stored there by his employer. After the goods had been pointed out to him, he left them, and for purposes of his own, walked through a passageway, through which one would necessarily have to pass to get to a part of the stored goods, and fell down an elevator shaft. The interior of the building was but dimly lighted by small electric bulbs, some of which were lighted and some were not. The light around the elevator shaft was very dim and the entrance was unguarded. The court,

after holding that plaintiff was on the premises on the implied invitation of the defendant, and that they owed him the duty to exercise reasonable care for his safety while there, said in regard to the contention that a verdict should have been directed because of the plaintiff's contributory negligence: "Appellants' argument upon this point is, that if the light was sufficient in the passway to enable appellee to see the elevator shaft he should have used his eyes and avoided the danger. If it was too dark for him to see, they say he should not have gone along the dark and unknown passway without a light. We are of the opinion that under the evidence it was a proper question for the jury to determine whether appellee was guilty of contributory negligence."

It is also contended by the defendant that the plaintiff, having voluntarily and without notice to it, attempted to cross the elevator shaft from the inside, in order to unlock the outside door, assumed the risk of injury. The same contention was made in the case of *O'Rourke v. Sproul, supra,* in which the court said: "The question of assumed risk is not involved. The appellee was not the servant of appellant. No relation existed between them which would relieve the appellant from liability for any injury occasioned by his negligence. *Shoninger Co. v. Mann,* 219 Ill. 242."

There being no such relation as master and servant involved in this case, the defendant's contention in this regard cannot be sustained.

We are of the opinion, therefore, that the trial court properly refuse to direct a verdict in favor of the defendant.

The defendant contends that the court erred in the admission of testimony on the part of the plaintiff. After the plaintiff had testified about seeing the safety gate up and the door partly open, he was asked the following question: "Well, after you came there and found the door open and the safety gate up, as

you have described, what did you do?" Answer: "I stopped and looked a second or two, and I thought I saw the elevator." After another question had been asked and partially answered, counsel for the defendant objected to what the witness thought and asked to have it stricken, but the court let it stand. The ruling of the court is assigned as error, the point being that it usurped the province of the jury. It is perhaps true that technically it was improper for plaintiff to state what he thought, as it was a conclusion.

It has been held, however, that where the conclusion is one that the jury must have necessarily drawn from the facts, it is harmless. In *Central Ry. Co. v. Allmon*, 147 Ill. 471, at 478 the rule is announced as follows: "It is a general rule, that a witness must testify to facts and not to opinions; and it may be admitted that the statement of the witness in this case was technically inadmissible; but it could not have done the defendant any harm, because the witness stated the facts upon which his conclusion was based, and that conclusion was one which the jury must necessarily have drawn from such facts, if he had not announced it. Where the inference to be drawn from a given state of facts is not clear or certain, a jury, in whose hearing the facts are recited, may be influenced by the opinion of a witness who tells them his conclusion therefrom. It is otherwise, however, where only one conclusion, and that an obvious and necessary one, suggests itself as soon as the facts are presented."

The plaintiff had testified that the safety gate was up and the door open. There was no dispute that he stepped into the shaft and fell into the pit. He declared that before doing so he looked a second or two. The jury must, therefore, have necessarily concluded that he thought he saw the elevator, for it would be inconceivable to believe that unless he actually thought he saw it, he would have deliberately plunged

down into the pit, there being nothing to indicate that he had in mind self destruction. In *Illinois Southern Ry. Co. v. Hamill*, 226 Ill. 88, complaint was made because the plaintiff was permitted to testify that he considered he was in a position of danger at the time he whipped up his horses, etc., because it was his conclusion. Concerning this, the court at page 94 said: "It, perhaps, may be true that the statement of the witness that he considered that he was in a dangerous situation was, in a sense, the conclusion of the witness. He had, however, before the question was asked, stated to the jury all the facts in his knowledge surrounding the accident, and if it were conceded the question was objectionable as calling for the conclusion of the witness, we think the answer worked no harm to appellant and should not be held to constitute reversible error."

We are, therefore, of the opinion that the court did not commit any reversible error in the admission of the testimony complained of.

It is next urged by the defendant that the court erred in giving instruction number 1, given by the plaintiff. This instruction is criticised by the defendant upon the ground that it required the jury to determine the amount of plaintiff's damage if they found the issues in his favor. The answer to this contention of the defendant is that the rule forbidding the giving of an instruction which advises the jury that it is their duty to assess damages if they believe certain facts to have been established by the evidence, applies only to cases where exemplary damages may be recovered and not to those cases in which those of a purely compensatory nature are sought, as in the case at bar.

In *Consolidated Coal Co. of St. Louis v. Haenni*, 146 Ill. 614, the rule is stated that supports the instruction complained of when the court used the following language: "Where the plaintiff has exercised

ordinary care and the defendant has been guilty of such negligence as has caused the injury, the law says that the plaintiff is entitled to receive such damages as will compensate him for the loss actually sustained by him. In such a case, we cannot see that it is wrong to tell a jury, that it is their duty to award by their verdict what the law awards by its established principles. An instruction to that effect merely tells them to obey the law." Further criticism of this instruction is made because it told the jury that "in determining the amount of damages, if any, that the plaintiff is entitled to recover in this case, you have the right and should take into consideration," etc. The suggestion being that it contained an assumption that the plaintiff was entitled to recover damages, and also that it would not require the assessment to be based on the evidence but authorized the jury to award such damages, as, in their opinion, the plaintiff was entitled to recover. It only requires a reading of the instruction to see that, in no uncertain language, it authorized the jury to award plaintiff only such damages as they believed from the evidence he had sustained, and that the same should be based on the evidence. We have investigated all of the criticisms made of the instruction and we are convinced that the criticisms are not well founded. The defendant also insists that the court erred in refusing to give the defendant's fourth requested instruction. This instruction is, as is conceded by the defendant, a cautionary one and, therefore, it was not error to refuse to give it, since the giving or refusing of instructions of a cautionary nature rests in the sound discretion of the court. *Birmingham Fire Ins. Co. v. Pulver,* 126 Ill. 329-339; *Penney v. Johnston,* 142 Ill. App. 634; *Chicago U. Traction Co. v. Goulding,* 228 Ill. 164.

It is also insisted by the defendant that the judgment should be reversed because of the remarks of plaintiff's counsel. It is contended that counsel for

plaintiff made statements in their arguments to the jury, which were outside of the record and prejudicial. It requires only a casual reading of the remarks complained of to perceive that they fall far short of being the kind and nature which the courts have held so prejudicial as to warrant a reversal. From the language complained of, we are unable to understand how it could have aroused the prejudice or passion of the jury, or how the defendant was injured thereby.

It appears that each time the defendant objected to the remarks of counsel, the court corrected the same, and in such a case the rule is as is stated in *Appel v. Chicago City Ry. Co.,* 259 Ill. 561-567: "Where objections made to improper argument are sustained, counsel is corrected and the jury are instructed to disregard it, the improper argument cannot usually be made the basis of reversal." In *West Chicago St. R. Co. v. Annis,* 165 Ill. 475, the court said: "It is   *   *   *   'a matter resting in the sound discretion of the trial judge to say when, under all the circumstances of the case, and in view of the counter remarks which may be made and the temper and character of the jury, whether a new trial should be granted or not, and unless it satisfactorily appears from the record that the trial court has abused its discretion in this regard courts of review cannot interfere.' "

Courts have always allowed counsel considerable latitude in the matter of their arguments to the jury and there must usually be a clear case of abuse before a court of appeal will reverse solely on account of improper remarks. *Chicago City Ry. Co. v. Donnelly,* 136 Ill. App. 204-211. Furthermore, most all of alleged improper remarks, to which our attention has been called, are instances of alleged misstatements of the evidence. In many of them, corrections were made and the mistake was acknowledged by counsel. We do not think there was any prejudicial error in

any of them or that they were intentionally made by counsel for the purpose of misleading the jury or creating any prejudice in their minds. Defendant contends that the verdict is against the manifest weight of the evidence and that the court should have granted a new trial. We are not prepared to say that the verdict is manifestly against the weight of the evidence. The court committed no error in refusing to grant a new trial.

It is further insisted that the amount of the judgment is excessive. The evidence shows that the plaintiff sustained a broken leg; was in the hospital under a doctor's care for two weeks and was thereafter confined to his bed at home for five weeks suffering much pain, after which he was again taken to the hospital where an operation was performed and where he remained 10 days, when he was taken home and confined to his bed three months with a cast on his limb from the hip to the foot most of the time; that when he was able to get up, he went around in a chair two or three weeks, after which he used crutches for a number of weeks; that it was about 16 months from the time he was injured until he returned to work. There is some evidence to the effect that the broken limb is shorter than the other leg.

From the showing, as disclosed by the record, the judgment is not excessive, but on the contrary, is exceedingly reasonable. After a thorough investigation of the reasons assigned and argued by the defendant for a reversal of the judgment, we are of the opinion that the court committed no reversible error and the judgment of the circuit court of DeKalb county will be affirmed which is accordingly done.

*Judgment affirmed.*