[No. 10961.   Department Two.   June 10, 1913.]

GEORGE ROGERS, *Respondent*, v. KANGLEY TIMBER COMPANY, *Appellant*.[1]

TRIAL—MISCONDUCT OF COUNSEL—STATEMENTS OUTSIDE RECORD—FAIR TRIAL. The repeated use by counsel of abusive language charging appellant with theft and fraud, not supported by anything in the record, and tending to prejudice the minds of the jury, deprives the party of a fair trial, and the error is not cured by instructing the jury to disregard the statements of counsel.

TRESPASS—CUTTING TIMBER—TREBLE DAMAGES—CASUAL OR INVOLUNTARY TRESPASS—INSTRUCTIONS. In an action for trespass for wilfully cutting timber, it is error to instruct that, if defendant removed down timber after notice to cease cutting and removing it, his acts as to such timber were voluntary and intentional; and to refuse to instruct that such removal, if done to save as much loss as possible, would not be evidence that the original trespass was wilful.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered July 1, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for trespass. Reversed.

*Clayton Chapman* and *Leon M. Bailey* (*Charles O. Bates* and *F. S. Blattner*, of counsel), for appellant.

*Govnor Teats, Hugo Metzler, Leo Teats*, and *Ralph Teats*, for respondent.

MAIN, J.—This action was brought for the purpose of recovering damages for trespass upon real property.

The plaintiff is the owner of the following described property, to wit: The south half of the southwest quarter of section 14, township 21, north, of range 1, east, Pierce county, state of Washington. The defendant is a corporation organized under the laws of the state of Washington. It appears that this corporation was organized for the purpose of taking over timber land owned by one Fuhrman for

[1]Reported in 132 Pac. 731.

the purpose of logging the same and thereby recouping, so far as possible, the amount of money which had been previously embezzled by Fuhrman from a bank, of which the officers were the organizers of the defendant corporation. The holdings which were taken over were in the vicinity of the plaintiff's property above described. The logging operations were begun during the year 1911, and continued over into the following year. While the operations were in progress, a logging road was constructed across the southwest corner of the plaintiff's land. From the plaintiff's land, a number of acres had been logged, when it was discovered that that particular property was not owned by the corporation. At this time, a portion of the timber which had been cut had been removed and a portion lay upon the ground ready for removal. The defendant subsequently, without the consent of the plaintiff, removed that portion that lay upon the ground. Negotiations for a settlement were entered upon immediately after the discovery of the trespass, but failed of culmination; hence the present action. The plaintiff seeks to recover damages to the land by reason of the construction of the logging road, damage to the portion of the timber remaining upon the forty uncut, damage by reason of the increased hazard from fire owing to the debris which had been left upon the land; and treble damages for the market value of the timber taken. The cause was tried to the court and a jury. During the progress of the trial, counsel for plaintiff made certain statements in the presence of the jury which the defendant claims had the effect of depriving it of a fair trial. During the opening statement it was said:

"Mr. Teats: . . . At that time, I believe, the evidence will show this man Fuhrman was conducting his wildcat logging operations over in the Rosedale district. . . ."

During the examination of the plaintiff as a witness in his own behalf, the following occurred:

"Q. What, if anything, did you do during the year 1911, or any other time, to protect that piece from fire and make

it more plain? Mr. Bates: I submit this is immaterial, because it is admitted he owns the property. Mr. Teats: They do not admit that the timber at the time was so clear that nobody but a thief would go over there and cut this man's timber off."

Again, during the cross-examination of the plaintiff, the following occurred:

"Mr. Bates: That is a government stake isn't it? A. It is a stake at the government corner. Q. The state put it there, the county government? A. The county put it there. Q. And you took it up and carried it away? Mr. Teats: We object to that. They want to show a wrong. Yes, we took it away, we have it here in court, and have got a right to, and you cannot say that because you come over and steal our timber that he did a wrong. That is the purpose of this examination."

During the cross-examination of one Fairchild, a witness on behalf of the defendant, the record shows the following:

"Mr. Teats: Q. This 80 acres there belonged to Fuhrman? A. It is not quite 80 acres; it is nearly. Q. How do you know it belonged to Fuhrman? A. Well, because they logged it off. Q. You never had any title to that? A. No, sir. Q. You do not know whether Fuhrman owned it or whether he stole it like he did the money in the bank? A. I do not know."

To all of which the defendant objected and excepted. The court said:

"There is no testimony of anything of that kind. The title to the other piece of land is not in dispute in this action, and I cannot see what good purpose it will do."

And after further colloquy, the court remarked:

"There is no evidence of any trespass on this Fuhrman land. I am inclined to sustain the objection and instruct the jury to disregard the statement of counsel about Mr. Fuhrman and his crooked record."

Fuhrman was not a party to the action. As above stated, the logging operations were conducted for the purpose of liquidating the losses sustained by the bank, apparently

through the perfidy of Fuhrman. The plaintiff contends that
the trespass was not casual or involuntary, and that the de-
fendant did not have probable cause to believe that it had
acquired title to the timber upon plaintiff's land. The de-
fendant's position is, that the trespass was casual and invol-
untary, and that it had probable cause to believe that it had
a right to log the land. The jury returned a verdict for the
plaintiff, and made a special finding that the trespass was not
casual or involuntary, and that it was committed without
probable cause for belief that the timber was owned by the
defendant. Motion for new trial being made and overruled,
judgment was entered upon the verdict for the amount of
general damages returned in the verdict, and for treble dam-
ages for the market value of the timber taken. The defend-
ant appeals.

The appellant contends that the trial court erred in a num-
ber of particulars; but two of these will be noticed: First:
Was the appellant deprived of a fair trial by reason of the
opprobrious epithets used by counsel for the respondent dur-
ing the progress of the trial and in the presence of the jury?
and second, Did the court in its instructions to the jury err
in defining the law?

I. It is claimed that, by reason of the statements of
the respondent's counsel during the progress of the trial and
in the presence of the jury, that the appellant was denied a
fair and impartial trial. The law guarantees to every liti-
gant the right to a fair trial. Statements not sustained by
the record of such a character as to prejudice the minds
of the jury against a litigant constitute prejudicial error.
Whatever may have been the shortcomings of Fuhrman, the
record fails to disclose any reason for characterizing the
appellant and its officers and managers by the severe language
made use of. The respondent contended in the superior court,
and contends here, that the language used properly charac-
terized the appellant's conduct. With this we cannot agree.
Neither was the error cured by the fact that the trial court

stated that he was inclined to sustain the objection and instruct the jury to disregard the statements of counsel about Fuhrman. The poison which had been previously instilled into the minds of the jury could not be removed in that manner. In *Florence Cotton & Iron Co. v. Field*, 104 Ala. 471, 16 South. 538, it appears that in the argument of counsel to the jury it was stated, referring to the opposite party to the litigation:

"They came down here, a party of rich northern capitalists, wanting to speculate on our property, and are now trying to rob an elegant, chivalrous southern gentleman of his justly and hard earned salary."

Objection being made, the court stated that the objection was sustained and that counsel's remark was improper. Whereupon counsel said: "Well, I withdraw the remark." Upon appeal it was stated by the court:

"Verdicts ought not to be won by such methods, and when an attorney, in the heat of debate, goes to such extraordinary lengths, generally, the court should promptly set aside any verdict that may be rendered for his client. The repressive powers of a court, to prevent such departures from legitimate argument of a cause before a jury, should be vigorously applied. No mere statement, that it is out of order or improper, can meet the exigencies of the case. Nothing short of such action on the part of the court, and a clear satisfaction, that the prejudice naturally excited by the use of such language had been removed from the minds of the jury, ought ever to rescue a case from a new trial on motion of the party against whom rendered."

II. As appears from the facts above stated, after the discovery of the trespass, the timber then down was removed against the consent of the respondent. The trial court was requested to instruct the jury, that if the appellant in removing the timber, or any part thereof, from the premises, did so for the purpose of saving same, or to save himself as much as possible from loss, that that would not be evidence

that the original trespass was wilful.    The specific request was in the following language:

"You are instructed that once the defendant has entered upon the premises of plaintiff and severed the trees from the stumps the trespass would be complete, and any act of the defendant thereafter, in removing such timber or a part thereof from the premises in order to save the same, or to save itself as much as possible of the loss, if you find that such was the reason for such removal, then such removal would not be evidence of malice or wilfulness on the part of the defendant in originally trespassing upon the land of the plaintiff and cutting the timber."

This request was refused, and the jury, upon the question, was instructed as follows:

"It is admitted by the superintendent and manager of the defendant company that the defendant took away that part of the timber on plaintiff's land after the time plaintiff notified them to cease cutting and removing his timber, and as to that timber you are instructed to find the acts of the defendant as voluntary and intentional."

It is now urged that the instruction given does not contain a correct statement of the law. The down timber was practically worthless to the respondent. To the appellant, with its logging facilities then at hand, it had a commercial value. The respondent's damages were not materially increased by the fact that the timber was removed. But the loss of the appellant, had it failed to remove the timber, would have been enhanced to the extent of its then market value. The instruction given, as a matter of law, determined that this act on the part of the appellant, so far as the down timber was concerned, was voluntary and intentional. This was error. The vital question in the case was not whether the appellant wilfully removed the down timber, but whether the original trespass was wilful and without probable cause. If the original trespass was not wilful, or if the appellant had probable cause for believing that it owned the property, then the fact that it subsequently removed the

down timber would not change the character of the original trespass. We think the requested instruction correctly states the law and should, therefore, have been given.

In *Batchelder v. Kelly*, 10 N. H. 436, 34 Am. Dec. 174, the court, while considering a similar question, said:

"Carrying the timber away might have had some tendency to have convinced the jury that the defendant was cognizant of and approved the original cutting; but such would not have been the necessary legal effect of the evidence, as a rule of law; and most clearly an affirmance of the cutting in this manner would not have altered the original nature of the act, so as to have rendered that wilful and malicious that was originally an unintentional and accidental trespass."

The judgment will be reversed and the cause remanded for a new trial.

CROW, C. J., FULLERTON, ELLIS, and MORRIS, JJ., concur.