THE STATE OF WASHINGTON, *Respondent*, v. GEORGE S. HEATON, *et al., Defendants*, GEORGE S. HEATON, *Appellant*.[1]

[1]Reported in 271 Pac. 89.

*Powell & Herman,* for appellant.
*Chas. W. Greenough,* for respondent.

BEALS, J.—Appellant, George S. Heaton, and one Carl Johnson were jointly informed against, charged with the offense of being jointists. A trial in May, 1927, resulted in a verdict of guilty as to defendant Johnson, the jury disagreeing as to appellant Heaton. A second trial of appellant resulted in a verdict of guilty, and from a judgment on this verdict and sentence based thereon he appeals.

When the case was called for trial, the court, on motion of the prosecuting attorney and over the objection of appellant, allowed the endorsement on the information of the names of three additional witnesses for the state. The appellant thereupon moved the court for a continuance, and assigns the denial of this motion, and the permission granted to the state to endorse on the information the names of the additional witnesses, as error.

The granting by the court of the state's motion to endorse the names of additional witnesses on the information, and the refusal of the court to grant appellant a continuance, were matters largely within the sound discretion of the trial court, and no abuse of this discretion appearing, we find in the action of the court, no reversible error.

Appellant had been for some years engaged in business in the city of Spokane, operating an establishment representing a large investment, known as "The Antlers," including a soda fountain, restaurant, con-

fectionery department, bakery and ice cream factory. Evidence was introduced by the state tending to prove that, during the month of March, 1927, certain persons had bought whiskey at appellant's place of business, and that appellant knew that liquor was being sold there.

Appellant assigns as error certain rulings of the trial court sustaining objections urged by counsel for the prosecution to questions propounded, on cross-examination, to one of the state's witnesses. This witness testified that he had bought liquor at appellant's place of business in the presence of appellant; and on cross-examination, admitted that, during the same month, he had bought liquor at other places in the city of Spokane. He was then asked, on further cross-examination, whether or not he remembered any of the bars where he had bought liquor, to which question an objection by the prosecution was sustained. In view of answers by the witness to similar questions propounded by appellant's counsel, we cannot say that the cross-examination on this point was unduly restricted to appellant's prejudice.

The testimony of one Carl Johnson, who had been informed against jointly with appellant, given upon the former trial, was read on appellant's behalf on his second trial. This witness was referred to by other witnesses sometimes as Carl Johnson, and sometimes as Frank Johnson; and had testified that his true name was Carl Franklin Johnson, there being offered in evidence in support of this statement his honorable discharge from the United States Army, an objection to the admission of which was sustained. In view of the fact that the witness testified that his true name was as shown in the honorable discharge, we cannot say that the refusal of the court to admit

the exhibit constitutes reversible error, although the proffered evidence might well have been received.

At the conclusion of the testimony, and again after the closing of the arguments to the jury, appellant moved the court to discharge the jury and declare a mistrial on the ground of misconduct of the attorney for the state, which motions were denied by the court; to which rulings appellant duly excepted. Appellant also moved for a new trial and assigns as error the court's adverse ruling thereon.

During the course of the trial, the credibility of one of the state's witnesses became a matter of some importance for the consideration of the jury; one witness for appellant testifying that the reputation of the witness referred to for truth and veracity was bad, while two witnesses for the state testified that it was good. In his argument to the jury, the prosecuting attorney, referring to the matter of the credibility of this witness, and other witnesses, for the state, spoke as follows:

"And then they attempt to make a comparison between the testimony of this man Johnson and Joe Hoffman by attacking Joe Hoffman's reputation in the community for truth and veracity. Members of the jury, I want to tell you now, that so far as Joe Hoffman is concerned and Frank Keenan and any other officers involved in this case, there is no question in my mind in regard to their honor. I have worked with them long and I would be in a position to know, and if I thought there was anything wrong with them I would not even put them on the witness stand here."

In the preliminary examination of prospective jurors, it appeared that, sometime prior to the date the case was called for trial, but after the names of the jurors from whom the jury to try appellant would be selected had been published, some person or per-

sons unknown had telephoned to the homes of several of the members of the panel and attempted to discuss with them, or with members of their families, the case then pending against appellant, or the general question of the enforcement of the prohibition laws. The person telephoning generally opened the conversation by stating that he was from the sheriff's office or some similar law enforcement agency; but the actual source of the telephone calls or the motive which actuated them was not disclosed on the trial. Whether they were instigated by persons interested in the prosecution, by appellant, or by some third party connected with neither, remained an open question. Whatever the source, the attempts to discuss the case with prospective jurors were admittedly grossly improper. The following from the cross-examination of appellant seems to be the only reference to this matter which occurred during the course of the taking of testimony on the trial:

"Q. You have been checking on jurors on this case, haven't you? A. I have not. Checking them, how do you mean? Q. Checking on jurors in this case, haven't you? A. Been checking on jurors in this case? Q. Yes, sir. A. Myself? Q. Yes, sir. A. Nothing more than through my friends. Q. How is that? A. Nothing more than through my friends. Q. Through your friends. One of your friends called himself Johnson, didn't he? A. No, sir, he did not that I know of. Q. And one of your friends called himself Jones? A. No, sir. Q. And one of your friends said he was a police officer? A. I don't think my friends would do that. Q. And some of your friends said he was a city investigator, isn't that right? A. I think you are inferring a whole lot. Q. Is not that correct? A. That is not correct. Q. Didn't you go down to the city of Cheney yourself and talk with one of these so called friends? A. I talked with a man at Cheney. Q. You talked with a man by the name of Patton, didn't you? A. Yes, sir. Q. And

you went out to Otis Orchards and talked to a man by the name of Corrigan, the blacksmith? A. I don't remember it. Q. You don't remember? A. I talked to several men at different places. Q. You don't remember of going out to Otis Orchards at all? A. Yes, sir, I remember going out to Otis Orchards. Q. You talked with a blacksmith out there by the name of Corrigan? A. I don't know whether I did or not. Q. You asked him about the juror McDonald, where he lived, didn't you?"

An objection to the last question was sustained on the ground of its immateriality. Upon this phase of the case, the court instructed the jury as follows:

"You are instructed that, after jurors have been summoned to serve at a term of court, it is not unlawful for parties having cases to be tried at that term to use lawful means to make inquiries and collect information regarding the qualifications of any such juror as may be called upon to serve in the trial of such case. On the other hand, it is unlawful for any person, either directly or indirectly, to influence or attempt to influence such a juror or improperly converse with a prospective juror in relation to the merits of any action, suit or proceeding."

Counsel for the prosecution, in his closing argument, referred to these telephone calls in the following language:

"You remember that nine tenths of the jurors that came into this box said that somebody had called them and said, one said, 'I am from the prosecutor's office,' another, 'I am a city prosecutor,' another, 'I am the city investigator,' another, 'I am Jones,' another, 'I am Johnson,' and 'what church do you belong to' or 'does your husband belong to,' and 'you know that Heaton is guilty and we want to get him.' Whom have we fixed the responsibility on for that very thing but this defendant? He admitted on the witness stand on cross-examination he had been to Cheney and talked with a man in regard to certain jurors out there. I

guess it is brought home to him, with a vengeance, and he admits it himself. .

"Now, when he said, 'You know that Heaton is guilty,' he or his henchman, or whoever it was, 'you know that Heaton is guilty,' suppose that juror had said, 'Yes, sure, I know he is guilty and I am on the jury,' he would not want that man. Suppose the juror had said, 'Of course not, he is not guilty, we are not going to let them get away with it,' that is the juror he wants, but to throw the suspicion over on the other side and me, the prosecuting attorney, can you imagine the despicable character of a man who will resort to anything like that? And I told you, each one, that the man who would do a thing of that kind had not one shred of decency in him. I asked you if you would still not hold it against him, regardless of that fact, if you were accepted as jurors, and you said you would not, and I am not asking you now to hold it against him. A man that will do a thing like that is crazy, and he has admitted that he is the man that did it. And then they say that we are the ones that have been doing this framing. . . .

"Now, members of the jury, these things are matters of reason and common sense. That is all there is to it. And all you need to do is to apply common sense to this case. We know that he was the one who was attempting to coach the jurors. He has admitted it. There is no evidence of anybody else doing any such thing as that, not a thing—

"MR. POWELL: If the court please—Mr. Greenough, May I reserve an exception?

"MR. GREENOUGH: I did not interrupt them a single time in this case, members of the jury. I let him ramble over all creation and such matters outside of the record and inside of the record and any place else.

"MR. POWELL: If the court please, may I have an opportunity to except?

"THE COURT: You may.

"MR. POWELL: I desire to take an exception to the improper argument of counsel. Unfortunately, the supreme court has held we have to do this. It is painful for me. I apologize, Mr. Greenough.

"Mr. Greenough: And then giggles over the painfulness of the thing that he is performing just as his client has done throughout this case—pained and giggles over it.

"Now, members of the jury, I do not like to indulge in personalities of that kind. You and I both have listened to the attempt of this counsel to divert the attention of you jurors from his client's guilt to the bootlegging dives that are running in town. . . ."

Appellant next complains of the use by counsel for the state, in his argument to the jury, of certain language which appellant contends transcended the bounds of legitimate argument and constituted mere abusive epithets.

After a careful consideration of the foregoing assignments of error urged by appellant, we are of the opinion that appellant did not have such a fair and impartial trial as is guaranteed by our laws to everyone accused of crime. In considering this question, we are not concerned with the question of the guilt or innocence of appellant of the crime with which he stood charged; we are concerned only with the question of whether or not he had a fair and impartial trial. There is ample testimony in the record, if believed by the jury, to sustain the verdict of guilty; but, as was said by this court, speaking through Chief Justice Rudkin, in the case of *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035, "whether the appellant was guilty or innocent he was entitled to a fair and impartial trial according to the forms of law;" and the opinion in the case cited sets forth at length quotations from other jurisdictions defining the duties of prosecuting attorneys to the effect that such an office is quasijudicial in its nature, and that such an officer should employ in his argument to the jury only such deductions from the evidence as are strictly legitimate.

In the case of *Snider v. Washington Water Power*

*Co.,* 66 Wash. 598, 120 Pac. 88, there was considered the cumulative effect of instances of unfair and prejudicial conduct on the part of counsel culminating in a particularly inflammatory argument in the closing address to the jury. This court affirmed the granting of a new trial, setting aside a verdict in favor of the plaintiff, holding that instructions by the court given from time to time were ineffective to disabuse the minds of the jury of prejudice created by improper conduct on the part of plaintiff's attorney.

In the case of *Rogers v. Kangley Timber Co.,* 74 Wash. 48, 132 Pac. 731, we reversed, because of improper conduct of plaintiff's counsel, a judgment entered in favor of the plaintiff upon a verdict of the jury. The court, speaking through Judge Main, says:

"The law guarantees to every litigant the right to a fair trial. Statements not sustained by the record of such a character as to prejudice the minds of the jury against a litigant constitute prejudicial error."

In this case, also, the court referred to the impossibility of removing from the minds of the jury, by an instruction of the court, the impression created by the improper questions, statements or arguments of counsel. To the same effect are the opinions in the cases of *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486; *State v. Arnold,* 130 Wash. 370, 227 Pac. 505; *McSweyn v. Everett,* 136 Wash. 202, 239 Pac. 206; *State v. Bozovich,* 145 Wash. 227, 259 Pac. 395; *Britt v. State,* 25 Ariz. 419, 218 Pac. 981; *Holder v. State,* 58 Ark. 473, 25 S. W. 279.

The declarations of counsel for the state, in his argument to the jury (above quoted), referring to the credibility of certain of the state's witnesses, to the effect that he had worked with them long and was in a position to know their character, transcended the

bounds of legitimate argument and amounted to an attempt on the part of counsel to testify as to the witnesses' good character. Such a statement as this cannot be met by any answering argument, and it is vain to attempt to do away with the prejudicial effect of such assertions by an instruction of the court to the effect that argument of counsel is not to be regarded as evidence. *Bjork v. United States Bobbin & Shuttle Co.*, 79 N. H. 402, 111 Atl. 533; *Texas & N. O. R. Co. v. Harrington,* 44 Tex. Civ. App. 386, 98 S. W. 653.

Counsel for respondent argued to the jury, and contends here, that appellant admitted, without objection, that he was the person who had approached, by means of the telephone, some prospective jurors likely to be called to sit on the case. We find no warrant in the record for this argument. Appellant did admit that he had made some investigation concerning the members of the panel from which the jurors before whom he was to be tried would be selected, but he did not admit responsibility for the telephone calls, or that he or anyone under instructions from him had sought to approach or influence any juror directly or through the family of such juror. The court properly instructed the jury upon this matter, and under the testimony we are clearly of the opinion that no justification existed for an argument to the jury on the part of either the prosecution or of the defense to the effect that either party was responsible for improper attempts to influence members of the panel. The references to this matter made by counsel for the state in his closing argument were prejudicial in the very highest degree; and, as we view the matter, were not justified by any basis therefor in the testimony. We cannot but hold that this argument of

counsel for respondent constitutes reversible error. A person involved in litigation which will require the submission of either certain of his property rights or his personal liberty to the judgment of a jury will naturally make some endeavor to ascertain, prior to the date of the trial, something about the men and women who will be called upon to pass on questions of such vital moment to him. If a party who has made some such investigation in an entirely proper manner, and admits on cross-examination that he has done so, can for that reason be accused by opposing counsel in argument to the jury of being responsible for admittedly improper attempts to influence prospective jurors, described by members of the panel on their *voir dire,* many great injustices may be perpetrated without possibility of remedy.

Appellant may or may not have been responsible for the entirely improper attempts to question or influence prospective jurors in this case. Counsel for respondent doubtless sincerely believed that appellant was so responsible; but, under the law, the jury was required to determine the guilt or innocence of the appellant from the testimony in the case and from that testimony alone, and in that testimony we find no basis for the argument of respondent's counsel of which appellant complains. It is difficult, and often impossible, to determine the responsibility for anonymous or camouflaged telephone calls. The telephone is an instrumentality which peculiarly lends itself to abuse by contemptible persons who, void of all sense of honor and decency, stoop to the most abominable and despicable means of gaining their ends. It is unfortunate that, in this instance, the persons responsible for the utterly illegal attempts to discuss this case with prospective jurors cannot be brought to justice and punished as they deserve; but that is ap-

parently impossible, and all that can be said is that the responsibility for such illegal acts is' wholly undetermined.

In regard to appellant's complaint of alleged unfair abuse of appellant by respondent's counsel, and of other argument by him not based on the testimony, we think that some of the language employed by counsel for the state was, to say the least, intemperate, and that some was probably without basis in the testimony and for that reason improper. In view of the conclusion which we reach upon the other points referred to, we do not pass upon the question of whether or not these matters, if standing alone, would entitle appellant to a new trial.

After a careful consideration of the entire record, we are of the opinion, as above stated, that the appellant did not have a fair and impartial trial.

Counsel for the state invokes the rule laid down by this court in *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942, in which it was held that:

"Misconduct of counsel cannot be urged as error unless the trial court was requested to correct it by instructing the jury to disregard the same and an exception taken to the court's refusal so to do, unless, as in the case of *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486, the misconduct was so flagrant that no instruction would cure it."

In the case at bar, counsel for appellant did object to the argument of counsel for the prosecution; and, under all the circumstances, we deem the objection on the part of appellant's counsel sufficient. In any event, the case falls within the exception noted, in that the prejudicial effect of the action complained of could not have been cured by any instruction by the court to disregard the same.

For the reason that, in our opinion, the appellant was not accorded that fair and impartial trial to which

464

he was entitled, the judgment is reversed and a new trial ordered.

FULLERTON, C. J., ASKREN, and MAIN, JJ., concur.

HOLCOMB, J., concurs in the result.

[No. 21285. Department Two. October 25, 1928.]