[No. 23397. Department One. November 20, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY E. TWEEDY, *Appellant*.[1]

[1]Reported in 5 P. (2d) 335.

*Jas. O. Blair*, for appellant.

*Dale McMullen* and *Claude C. Snider*, for respondent.

BEELER, J.—The appellant and his son Donald, who is twenty years of age, by information were jointly charged, in counts one and three, with giving intoxicating liquor to two minors, girls, thirteen and fifteen years of age respectively, and in counts two and four, with contributing to the dependency of those minors. The son entered a plea of guilty to all four counts. The father entered a plea of not guilty. At the trial of the cause, he was acquitted on counts one and three, but convicted on counts two and four. Appellant's motion for a new trial being overruled, judgment and sentence was pronounced on the verdict. This appeal followed.

Six errors are assigned: (1) Insufficiency of the evidence to support the verdict; (2) that the state failed to prove venue; (3) the refusal of the court to strike the testimony of the younger girl adduced on rebuttal; (4) overruling appellant's motion for a new trial; (5) misconduct on the part of the prosecuting attorney; and (6) giving instruction No. 8 to the jury. We shall dispose of these assignments in the order enumerated.

There was competent evidence offered from which the jury was warranted in finding that the appellant

resides at 1719 west 23d street, in Vancouver, Washington, and operates the Evergreen drug store located at Fifth and Main streets, in that city; that, at about 2:30 o'clock on the afternoon of December 1, 1930, the appellant and his son Donald left appellant's home for the purpose of returning to the drug store, and on reaching the sidewalk in front of appellants' residence, they met two girls, the prosecuting witnesses. A brief conversation occurred between the girls and Donald, whereupon he and his father got into the front seat and the two girls into the rear seat of appellant's automobile. The car was then driven to within one city block of the drug store, where the father got out and walked to the store. It appears that the parents of the younger girl conduct a transfer business within a few yards of appellant's store.

Donald and the two girls drove about the city of Vancouver for a short time, and then returned and stopped in front of appellant's store, where the son got out, went into the store, and returned with some cigarettes. Thereupon, the son and the two girls drove to East Vancouver, where he purchased a bottle of moonshine whiskey. On returning to the car, he gave the liquor to the older girl. These three young people then drove to the Evergreen hotel, arriving there at some time between 3:00 and 3:30 p. m. The two girls then went into the lobby of the hotel and Donald, after he had parked the car, also went to the hotel and registered under the name of "Johnson," and was assigned to room 214. The two girls and Donald went to this room, and presently he telephoned to his father at the drug store, who brought two bottles of Canada Dry and four glasses. Drinks were mixed, and the father and the son and the two girls partook of these refreshments. The younger girl drank sparingly, but the older girl imbibed quite

freely. While in the room, the father drew the older girl onto his lap, kissed her and pinched her leg. He also kissed the younger girl.

The record is not clear as to the length of time the father remained in room 214. At any event, some time between 5:00 and 5:30 that afternoon, the older girl became hilarious and boisterous, and Donald again telephoned to his father stating that the older girl was "loppy." Thereupon the father, using his own language, "mixed some aromatic spirits of ammonia in a glass and headed up there as fast as I could." This drink temporarily quieted the older girl, and thereupon both girls were then taken by Donald to the home of the younger girl.

Later that evening, the older girl in company with two boys about eighteen years of age returned to the Evergreen hotel and inquired for Donald, who, it appears, was not there at that time. These boys and the older girl met the appellant at or near his drug store, and he procured the key to room 214 and admitted the girl and her two boy companions to the room.

There is no merit to appellant's first contention that the evidence is insufficient to sustain the judgment. These two young girls were in room 214 with Donald at the time the appellant arrived with the four glasses and the two bottles of Canada Dry. Finding his son in the presence of these two young girls, he made no protest or objection, but on the contrary drank with them, and smoked cigarettes with them. He took the older girl onto his lap and kissed her. He kissed the younger girl. There is also competent evidence from which the jury was justified in finding that the appellant told "dirty stories" in the presence of these girls. True, the appellant and his son Donald denied the testimony of the two girls, but under the

facts and circumstances, it was for the jury to say whether the appellant's conduct was such as to encourage and cause these two minors to grow up to lead idle, dissolute and immoral lives.

■ Appellant next contends that the state failed to prove venue. The mother of the older girl was asked: "Q. Where is your home? A. 803 West 23d street. Q. Here in Vancouver? A. Yes." She also testified that her daughter attended the Shumway high school, and was asked:

"Q. Where is the Shumway high located? A. On Main street. Q. What city? A. Vancouver, Washington. Q. Do you know where the Evergreen hotel is located. A. Yes. Q. In what county and state is the Evergreen hotel? A. Clark county."

A sister of the younger girl was asked: "Q. Where do you live? A. 2801 W street. Q. Here in Vancouver? A. Yes."

The older girl, while on the stand, was asked: "Q. What school do you attend? A. Shumway junior high. Q. Here in Vancouver? A. Yes."

Culbertson, a witness for appellant, testified: "Q. Do you manage and operate the Evergreen hotel here in Vancouver? A. Yes, sir."

Thus it appears that the mother of the older girl testified that the Shumway high school is located in Vancouver, Washington, and that the Evergreen hotel is located in Clark county. Both of the girls testified that the Shumway junior high is located in the city of Vancouver. There is other testimony in the record of the same tenor. The information was filed and the trial was held in the superior court of Clark county, in Vancouver, Washington. We are satisfied that the venue was sufficiently proven under the prior decisions of this court. *State v. Chin Sam*, 76 Wash. 612, 136

Pac. 1146; *State v. Heppell*, 148 Wash. 664, 269 Pac. 1046.

■ The appellant next contends that the trial court erred in refusing to strike the testimony of the younger girl, called by the state in rebuttal, who was asked: "Q. Prior to December 1, 1930, had you ever been in a hotel room? A. No." This testimony was admitted without objection. The appellant immediately moved to strike it on the ground that it was not proper rebuttal testimony.

It is sufficient to say in this regard that Donald, called as a witness in behalf of his father, not only undertook to contradict the testimony of the two girls, but also testified affirmatively that, after he had registered at the hotel, he told the girls to go to the mezzanine floor. Donald's testimony as a whole was calculated to impress upon the jury the fact that the younger girl must have had considerable experience in and about public hotels prior to December 1, 1930. Appellant concedes that this testimony would have been proper if introduced by the state in its case in chief. In view of the nature of Donald's testimony, we are of the opinion that the ruling of the trial court was correct.

■ The appellant next contends that he was denied a fair trial by reason of misconduct on the part of the prosecuting attorney and the trial judge. We have carefully read the entire record, and find no showing of misconduct on the part of the learned trial judge.

Now, as to the conduct of the prosecuting attorney. It appears that the appellant had caused a subpoena to be placed in the hands of the sheriff of Clark county to be served upon one W. R. Newell, an intended witness for the appellant. The sheriff, however, did not serve the subpoena. The appellant on direct examination testified that Newell was employed

as bell boy at the Evergreen hotel on December 1, 1930. The prosecuting attorney on cross-examination inquired of the appellant whether he knew the whereabouts of Newell, who stated he did not. On the following day, near the close of the case, the prosecuting attorney called the sheriff as a witness on rebuttal and the following occurred:

"Q. You are the sheriff of Clark county, Washington? A. Yes. Q. As such sheriff was there placed in your hands for service a subpoena for William or W. R. Newell in this case? A. Yes. Q. Were you able to find him? A. No. Q. Do you know where he is? A. I do. Q. Where is he? A. Seattle. Q. Do you know what he is doing there? MR. BLAIR (attorney for appellant): Do you know that of your own knowledge or have you been told? A. I was told. MR. BLAIR: I object to the witness testifying to what he has been told. THE COURT: Sustained. Q. Have you been informed by a public officer of the county of King and State of Washington, as to the whereabouts of the man Newell? A. I have. Q. Who was that officer? A. Chief deputy Coffee. Q. Deputy what? A. Sheriff. Q. Where did he say he was? MR. BLAIR: I object to that. THE COURT: Sustained. Q. When did he give you that information. A. Yesterday. Q. How did he give it to you? A. Telephone. MR. McMULLEN (prosecuting attorney): If the court please, I think I am entitled to have this man testify as to the whereabouts of this man. He was called for this morning as a witness, an apparent effort to show that they were wanting his services. I have reason to believe that the defendant knew at the time the whereabouts of the man. I think we are entitled to show why he is not here. THE COURT: You can show that if you can do it under the rules of evidence; *not by hearsay evidence.* (Italics ours). MR. McMULLEN: I don't know how I can prove it. MR. BLAIR: If Mr. McMullen is going to make an extended argument I think he should have the jury excused. He has made one statement he hasn't any proof of. (Colloquy). MR. McMULLEN: I think you know exactly where he is. MR. BLAIR:

You have no reason—The Court: You can ask him any question you want to and I will rule on it. Q. What was the information that this deputy sheriff of King county, Washington, gave you yesterday as sheriff of this county as to the whereabouts of this man Newell? A. In jail."

Thus it appears that the state finally succeeded in introducing testimony which the court on three prior occasions ruled was incompetent and inadmissible. It is obvious that the prosecuting attorney believed that bringing to the attention of the jury the fact that Newell was then lodged in the King county jail, would prejudice the appellant in the eyes of the jury and thereby better aid the state in procuring a conviction. The prosecuting attorney thrice ignored the rulings of the trial judge. His persistence in that regard, we are sure, was not intended as an exhibition of disrespect of the court, but indicates a belief on his part that the testimony would greatly assist him in discrediting the appellant before the jury. We find this testimony was prejudicial, and that the injury or harm was not cured, even though stricken by the court and the jury instructed to disregard it.

It must always be remembered that public prosecutors are quasi-judicial officers. While they may prosecute vigorously, yet in doing so they shall not be permitted to disregard the rulings of trial courts. The attitude of the prosecuting attorney in this instance was not brought about in the heat of forensic battle. The record shows that, up to the time the sheriff was called as a witness, the trial had proceeded in an orderly fashion. Hence, all the more reason why the learned prosecutor should have observed the rulings of the court.

This court, in *State v. Carr*, 160 Wash. 83, 294 Pac. 1016, said:

"The prosecuting attorney is a quasi-judicial officer, and it is his duty to see that one accused of a public offense is given a fair trial. The court has frequently stated the rule as to what constitutes misconduct on the part of counsel. The following cases are decisive on the question. In *State v. Devlin,* 145 Wash. 44, 258 Pac. 826, the prosecutor put the fact before the jury that the defendant's picture was in the rogue's gallery. The case was reversed. We said:

" 'The question involved is that of a fair and impartial trial. In *State v. Pryor,* 67 Wash. 216, 121 Pac. 56, this court said:

" ' "A fair trial consists not alone in an observation of the naked forms of law, but in a recognition and a just application of its principles."

" 'It is the law of the land, a right vouchsafed by the direct written law of the people of the state. It partakes of the character of fair play which pervades all the activities of the American people, whether in their sports, business, society, religion or the law. In the maintenance of government to the extent that it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all, whether he be guilty or not, has his picture in the rogue's gallery or not. In the *Pryor* case just referred to, it was said that it must be remembered, as stated in *Hurd v. People,* 25 Mich. 404, "that unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained is unjust and dangerous to the whole community." '

"In the case of *State v. Montgomery,* 56 Wash. 443, 105 Pac. 1035, 134 Am. St. 1119, we said:

" 'The safeguards which the wisdom of ages has thrown around persons accused of crime cannot be disregarded, and such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims.'

"See, also, the following: *Snider v. Washington Water Power Co.*, 66 Wash. 598, 120 Pac. 88; *Rogers v. Kangley Timber Co.*, 74 Wash. 48, 132 Pac. 731; *State v. Arnold,* 130 Wash. 370, 227 Pac. 505; *State v. Bozovich,* 145 Wash. 227, 259 Pac. 395; and *State v. Heaton,* 149 Wash. 452, 271 Pac. 89."

In civil cases, we have long since adopted the salutary rule that improper conduct on the part of counsel calculated to prejudice the minds of the jury is ground for granting a new trial. This rule has been frequently applied in personal injury actions where an attorney for one of the litigants makes mention of the fact that one or more of the parties to the action is covered by accident insurance. *Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202; *Stratton v. Nichols Lumber Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59.

We find it unnecessary to discuss the remaining assignments of error, except to say that the instructions as given were comprehensive and defined the law applicable to the case with fairness to both parties, including instruction No. 8.

For the reasons assigned, the cause is remanded for a new trial.

PARKER, HERMAN, and MITCHELL, JJ., concur.

TOLMAN, C. J. (dissenting)—I am unable to see in the so-called misconduct of counsel that prejudicial quality which calls for a reversal, and I therefore dissent.