[No. 29812.    Department One.·  ·March 22, 1946.]

THE STATE OF WASHINGTON, *Respondent,* v. CLYDE F. PERRY, *Appellant.*[1]

'Reported in 167 P. (2d) 173.

*Ralph Purvis,* for appellant.

*Frederick B. Cohen* and *W. U. Park,* for respondent.

STEINERT, J.—An information filed by the prosecuting attorney for Kitsap county charged the defendant with the crime of assault in the second degree, alleging that the assault was made with intent to commit rape. Upon a verdict of guilty rendered by the jury, the court entered judgment of conviction and sentence. Defendant appealed.

The evidence introduced by the state may be summarized as follows: The complaining witness, a widow about forty years of age, resided with her sister a short distance from the business district of the city of Bremerton. The house in which she lived is in the middle of a block and is situated several hundred feet back from the street. A private driveway leads from the street to the house.

On the night of July 30, 1945, at about 10:30 o'clock, the complainant boarded a bus in the downtown section of the city and rode toward her home. Seated beside her, next to the window, was a man whom she did not know but who later proved to be the appellant herein, a married man about twenty-five years of age, whose home was approximately a half mile beyond complainant's place of residence. No word or other communication passed between these two passengers while riding on the bus.

Nearing her destination, complainant signaled for a stop and moved forward to the front of the bus. For the accommodation of the complainant, the operator of the bus stopped the conveyance midway in the block at a point opposite the private driveway, as he had been in the habit of doing on similar occasions. Complainant disembarked and proceeded up the driveway toward her home.

In the meantime, unknown to the complainant, appellant had also left the bus, making his exit by the rear door, and was following her up the driveway. Reaching a point

near the house, complainant heard footsteps directly behind her, whereupon she stopped and turned around. Appellant made some indefinite inquiry of her concerning the locality of a certain street and, upon her reply to the effect that she did not know its location, struck her violently in the face, across her nose and mouth. He then seized her by the throat, at the same time saying, "I am going to rape you."

Complainant endeavored to scream, but could not do so because of appellant's hold upon her throat. She fought with all her strength, but was overpowered and borne to the ground, with him on top of her. She begged him to let her go, offering to give him money or to write him a check if he would but leave her alone. Despite her pleas, he continued choking and beating her.

The struggle lasted about five or seven minutes, when appellant finally desisted without effecting his declared intention. In the struggle, complainant lost her earrings and one of her shoes. She was bleeding from her nose, mouth, and ears. One of her stockings was torn, and abrasions were inflicted upon one of her legs.

When allowed to free herself, complainant got up from the ground and, at the first opportunity, ran into her house, told her sister what had occurred, and summoned the police. The appellant hurried away from the vicinity and shortly afterwards arrived at his own home, where he changed his clothes, after which he went to his place of work at the shipyards, on night shift.

The next day, the police, upon a second visit to complainant's home, examined the spot where the attack had occurred and found the missing earrings and shoe. About nine days later, they arrested the appellant. At first, he denied all connection with the crime but, upon being identified by the complainant, admitted that he had assaulted her, although he strenuously denied that it was with any intention to commit rape upon her.

His testimony upon the trial was that he had been drinking heavily during that evening and that someone had "doped" the drinks which he had imbibed. He refused to

tell, however, who had been his companions at the time the drinks were being served. He further testified that he had struck the complainant because, when he inquired of her the direction of a certain street, she reproached him for being drunk, which made him "mad at her." In his testimony, he also went to some length in emphasizing the good moral character which he had borne throughout life, asserting that he had never had sexual relations with any woman other than his wife. To this he added that he had always been of a nervous temperament and that he had once been examined by a physician for that ailment, brought about or accelerated by the fact that his marriage was opposed by his wife's father. On cross-examination, appellant admitted, however, that he had recently been convicted for assault in the third degree, committed upon another woman.

The assignments of error, two in number, are directed solely to alleged misconduct on the part of the trial judge and of the prosecuting attorney. It should be stated, at this point, that appellant's present counsel came into the case after the judgment of conviction was entered.

The first assignment of error is predicated upon certain remarks made by the trial judge when the case was first called for trial.

It appears from the evidence that, on the night before the trial, appellant, while in jail, had asked that he be given a mental examination, claiming that a fellow cell-mate by his actions "nearly runs me crazy." The next morning, before the commencement of the trial, such examination was made in the judge's chambers, at which appellant's attorney was present. Upon the completion of the examination, proceedings in open court were begun with the calling of a jury. After twelve prospective jurors had been called from the assembled panel and had taken their seats in the jury box for examination upon their *voir dire*, the trial judge, in his general explanation of the nature of the case, made this statement:

"And I think I should say to you, Mr. Perry [appellant] has acted somewhat peculiarly in jail and the doctors watched him and the deputies watched him and he has had

two attorneys, one attorney before Mr. Johnson, and no one else has ever suggested that he wasn't mentally capable. He's nervous, excitable, and emotional, but in order to be certain, as certain as we can be; we want to be sure to protect anybody who has any mental irresponsibility, we had two doctors examine him. We don't have a psychiatrist, but we had two doctors examine him, and they both insist that he is mentally all right and no one else has ventured the opinion he is not. So, he is going to trial on this charge."

■ No exception to these remarks was taken, no motion to discharge the panel of jurors was made, no motion for continuance of the case because of the remarks was interposed, and no motion for new trial on that, or any other, ground was presented. The examination of the jurors on their *voir dire* proceeded regularly to its conclusion, and, in the absence of any showing to the contrary, it must be presumed that appellant's counsel satisfied himself that the jury as finally selected was not influenced unfavorably toward the appellant by the court's remarks.

At any rate, counsel did accept the jury, and did elect to try the case upon the evidence to be submitted. In fact, upon his direct examination appellant himself went to some length in explaining why he had asked that the mental examination be made, and he also brought out other facts pertaining to his nervous, excitable, and emotional temperament, evidently with the view of disproving any specific intent on his part to commit rape upon the complainant, or else in the hope of evoking a sympathetic attitude on the part of the jury.

■ We are satisfied that the trial court made these remarks with the sincere purpose of fully protecting the appellant under the situation then presented, and that the effect of the remarks, so far as the jury was concerned, was favorable rather than prejudicial to the appellant.

■ Aside from that, however, and regardless of any question as to the wisdom or propriety of the court's utterances under the peculiar circumstances, this assignment of error is unavailing for the reason that appellant failed to safeguard any rights that he may have had, in that he did not except to the court's remarks, nor move to discharge

the jury panel before the examination upon *voir dire* began, nor call the matter to the attention of the court through a proper motion for new trial. One may not elect voluntarily to submit his case to a jury satisfactory to him, and then, after an adverse verdict, for the first time on appeal claim error which, if it did exist, could have been cured or otherwise redressed by some action on the part of the trial court. *Shoemaker v. Bryant Lbr. & Shingle Mill Co.,* 27 Wash. 637, 68 Pac. 380.

The second assignment of error relates to certain statements made by the prosecuting attorney in his final argument to the jury. Although the preceding argument, made by appellant's counsel, does not appear in the record, it is apparent from the report of the state's final argument that it was largely in answer to the contention made by appellant that he had no intention to commit rape. Appellant's counsel seems to have argued that the evidence showed an absence of such intent on his part, because (1) if he had such intent, he could and would have accomplished his purpose, and (2) in his drunken condition he could not have formed such intent. In his reply to the argument of appellant's counsel the prosecuting attorney, after detailing the events, used this language:

"When he [appellant] came before the jury, he had to have some kind of a story, so he said, 'Yes, I struck at her. I never saw her in my life but I struck her.' He followed her up this lonely trail, some 125 or 200 feet and struck at her, 'Because I was mad at her.' Mad—he was just a *mad dog.* I will tell you how I feel about it. The court has said, you can find him guilty of second degree assault, third degree assault, or let him go entirely. He's had a fair trial and he's been given a just trial. He's had an opportunity to present his side. The evidence has been presented here. . . . Upon you, devolves a serious duty, a responsibility for seeing that you, your sisters and your daughters and your wives can walk the streets of Bremerton at night without being molested or attacked by *beasts* like that." (Italics ours.)

No exception was taken to any part of this statement, no request was made that the jury be instructed to disregard

the language used by counsel, and no motion for new trial based thereon was ever filed. Appellant's contention, made for the first time on appeal, is that the epithets "mad dog" and "beasts" were entirely unsubstantiated by the evidence and constituted misconduct on the part of the prosecuting attorney.

It is the generally accepted rule that in order to complain of improper remarks or misconduct on the part of the prosecuting attorney, the accused must make proper and timely objection thereto, unless such remarks or misconduct are so obviously prejudicial or so flagrant that an instruction could not have cured the inflammatory effect created thereby. *State v. Wright,* 199 Wash. 521, 92 P. (2d) 247, and cases therein cited; 23 C. J. S. 594, Criminal Law, § 1112, and cases cited in the footnotes.

It is within the range of legitimate argument for the prosecuting attorney to characterize the conduct of the accused in language which, although it consists of invective or opprobrious terms, accords with the evidence in the case. In this instance, the terms used by the prosecuting attorney were simply figures of speech, characterizing the acts of the appellant. They were not employed by the attorney, nor understood by the jury, as a literal designation of appellant's classification in the realm of zoology. If the evidence produced by the state is to be believed, the brutality of the appellant could hardly have been exceeded by the rapacity of a mad dog or a beast.

The judgment is affirmed.

DRIVER, C. J., SIMPSON, and MALLERY, JJ., concur.

MILLARD, J. (dissenting)—Appellant was represented on appeal by counsel who did not represent him on trial of the cause. The remark of the trial judge constituted unlawful comments of a prejudicial nature in violation of both the letter and spirit of Art. IV, § 16, of our state constitution.

While appellant may be devoid of every manly instinct and guilty of a most abhorrent crime, nevertheless he is entitled to a fair trial. The judgment should be reversed with direction to trial court to grant a new trial.

May 2, 1946. Petition for rehearing denied.