[No. 36044. En Banc. June 13, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD R.
ROSE, *Appellant*.*

*Filis L. Otto* (of *Ruff, Otto & Potter*), for appellant.

*John G. McCutcheon* and *Schuyler J. Witt*, for respondent.

* Reported in 382 P. (2d) 513.

DONWORTH, J.—Appellant was tried and convicted of the criminal offense of sodomy. The only question presented by this appeal is whether prejudicial error was committed by the trial court in denying appellant's motion for a mistrial when the deputy prosecuting attorney, in his closing argument to the jury, referred to appellant as a "drunken homosexual."[1]

Whether the use of this characterization of appellant by the deputy prosecutor in his closing argument constituted prejudicial error depends upon the context in which it was used and the effect which it was likely to have upon the jury. This concept was well expressed in *State v. Navone*, 186 Wash. 532, 538, 58 P. (2d) 1208 (1936), where the court said:

"Misconduct is to be judged not so much by what was said or done as by the effect which is likely to flow therefrom. What would be misconduct in one case might very well be held not to be misconduct in another. Each situation involving the question of misconduct must stand by itself and must be considered in the light of all of its facts and circumstances to the end that verdicts properly arrived at shall not be disturbed, and that those verdicts which may have been induced by prejudice, or by something beyond the issues, shall not be allowed to stand. . . ."

The testimony presented by the state and by appellant as to exactly what happened on the night during which the offense charged was alleged to have been committed was in direct conflict. If the jury believed the state's evidence, they were justified in finding him guilty. On the other hand, if they disbelieved it and believed appellant's evidence, they could have acquitted him. Crucial to the state's case was the testimony of a merchant patrolman, who testified that he parked his car behind that of appellant's car and left his lights shining on it. The witness then testified that he left his own car and walked over to appellant's car, where he observed appellant and another man engaged in an act of sodomy. Appellant's evidence

---

[1] After the verdict, appellant's motion for new trial, based on this same allegedly prejudicial error, was denied.

contradicted in all material respects the patrolman's version as to what happened.

During his argument to the jury, counsel for appellant argued to the jury as follows:

". . . Do you think that they would not cease doing an act of this type, if a car came up behind them with the lights shining in their own car? Yet they would have you believe they could continue an act of this type while Mr. Richardson had time enough to stop his car, open the door, get out, either walk around the door, or shut the door, and walk a car length up there. If I remember correctly, all but one of you had children, and children are just like adults, only they show it a little bit more. If they're doing something that they shouldn't be doing, the minute they're interrupted, they turn their head, they run, they hide, stand there with an innocent expression on their faces, or something like that, and people do the same thing. In a case like this, if Mr. Bengston had been doing what they— what Mr. Richardson—remember Mr. Richardson is the only one who said that Mr. Bengston had been doing what Mr. Richardson says he was doing—, all that he had to do was to look up, turn his head, and it would have taken him like that (snap of fingers), and to believe that anything like that would happen and continue to happen up until the time that Mr. Richardson could get to a place where he could make this so-called observation, is fantastic. It's not only not beyond a reasonable doubt, it's fantastic to believe that situation could exist. . . ."

In response, the deputy prosecutor, in his closing argument, said:

". . . Mr. Potter made a great to do about anybody that was caught doing this unnatural act; that he would immediately stop it, and start acting innocent, or something like that, and he says it's impossible to conceive of an individual, in the position which Mr. Richardson described to you, remaining in that position when the car pulled up, and the door slammed, and so forth, with the lights on. Let me only say this: I submit to you it is entirely possible that a *drunken homosexual*, lying in the slumped-down position in the seat to remain in just that position—" (Italics ours.)

At this point counsel for appellant interrupted the deputy prosecutor and requested the court to declare a mis-

trial. The deputy prosecutor argued to the court that the state's evidence could lead to no other conclusion. The court then overruled the motion for a mistrial.

 Counsel, in his closing argument to the jury, cannot make prejudicial statements not sustained by the record. *State v. Heaton*, 149 Wash. 452, 271 Pac. 89 (1928); *Rogers v. Kangley Tbr. Co.*, 74 Wash. 48, 132 Pac. 731 (1913). The particular applicability of this to a prosecutor was pointed out in *State v. Reeder*, 46 Wn. (2d) 888, 285 P. (2d) 884 (1955), where it was emphasized that a prosecuting attorney is a quasi-judicial officer whose duty is to see that a defendant in a criminal prosecution is given a fair trial.

In *State v. Buttry*, 199 Wash. 228, 251, 90 P. (2d) 1026 (1939), this court quoted with approval the following statement from *Sullivan v. State*, 47 Ariz. 224, 55 P. (2d) 312:

" 'The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks.' "

 The deputy prosecutor contends that his remark was a proper inference from the evidence. At the trial, in response to defense counsel's motion for a mistrial and before the jury, he said:

"If your Honor please, I submit that the evidence proposed by the State leads to no other conclusion than that. The defendant himself admitted—he said he had seven or eight drinks and could walk."

It was apparently on this theory that the remark was a reasonable deduction from the evidence that the trial court allowed the trial to continue after the request for a mistrial. There is a distinction to be drawn between consuming alcoholic liquor and being drunk or intoxicated. This was recognized by the state's own witnesses when the subject was introduced by the deputy prosecutor.

The merchant patrolman Richardson, who was the state's principal witness, when asked if he had an opinion as to whether Mr. Rose was intoxicated at the time he made the arrest, replied, "Oh, he had been drinking. I wouldn't say he was intoxicated."

A second merchant patrolman, who arrived later on the scene of the arrest, was asked, on cross-examination, in regard to intoxication, "How about Mr. Rose? Tell us what his condition was?" He answered, "Well, I don't know. Mr. Rose had been drinking. As far as I know, he knew what he was doing, and could walk, and everything."

On the subject of intoxication, not only was the distinction drawn between merely drinking and being drunk, but the unmistakable inference from the state's own witnesses was that the appellant was not drunk. Thus, the deputy prosecutor's remark to the jury was not a reasonable deduction, it was not supported by the evidence, and it was clearly prejudicial.

We turn our attention to the word "homosexual." Webster's New Twentieth Century Dictionary, Unabridged (2d ed.), defines the word homosexual, "one whose sexual inclination is toward those of the individual's own sex rather than the opposite sex." As thus defined, its application in describing appellant might be a permissible deduction from the evidence when arguing to the jury. This court has said that a reasonable latitude in argumentative deduction from the evidence will be allowed. *State v. Peeples*, 71 Wash. 451, 129 Pac. 108 (1912). However, it should be borne in mind that the term homosexual was not used in summing up the evidence, but was delivered as a degrading description of the appellant, coupled with the adjective "drunken" (discussed above). There were no allegations nor proof of any homosexual behavior other than the alleged activity for which he was being prosecuted. We do not now decide that the term "homosexual" as used here would constitute reversible error if used alone; however, used in the phrase "a drunken homosexual" in the posture of this case, it constituted prejudicial misconduct because it tended to degrade appellant in the minds

of the jury *in a case where the evidence did not warrant such a characterization.*

Respondent finally contends that the statement was made in response to the closing argument made by appellant's counsel, quoted above, to the effect that it was unbelievable that appellant would be surprised in the commission of such an act under the conditions present. Respondent, in its brief, states:

" . . . Respondent's reply supplied a reasonable explanation for this behavior. The State was entitled to answer this particular argument by Appellant."

█ Saying that appellant was a drunken homosexual may well have answered for the jury the argument presented by defense counsel, but it was not a proper consideration for the jury when not supported by the evidence. However, respondent's contention is that the deputy prosecutor had a right to answer the argument of opposing counsel as he did. Respondent cites *State v. Van Luven,* 24 Wn. (2d) 241, 163 P. (2d) 600 (1945).

In the *Van Luven* case, opposing counsel, during a heated trial, criticized each other sharply. At one point the defense counsel, in his closing argument, said in regard to the prosecutor: " '. . . I don't think down in his heart he thinks that this is a case beyond any doubt.' " The prosecutor, referring to this remark in his closing argument, retorted:

" 'Now, counsel made a statement I asked the stenographer to mark in which he turned to me and pointed at me and said, "Counsel down in his heart doesn't believe that the defendant, Van Luven, is guilty." Had he not said that, it would be an error for me to tell that I do believe him guilty, sincerely, personally, and with all of my heart.' "

This court held that, in view of the statement of the defense counsel, the prosecutor was entitled to answer it. In subsequent discussion, the court said that, in trying the case and presenting it to the jury, each counsel had made statements which might well have been left omitted. In the *Van Luven* case, the court was relying on the authority of

*State v. Wright,* 97 Wash. 304, 166 Pac. 645 (1917), where we adopted the rule:

" 'Remarks of the prosecuting attorney which ordinarily would be improper are not ground for exception if they are provoked by defendant's counsel and are in reply to his statements.' 12 Cyc. 582."

In the case at bar, there was no provocation nor misconduct by appellant's counsel to excuse the explanation of appellant's alleged conduct given to the jury by the deputy prosecutor. In our opinion, the argument of appellant's counsel did not invite the use of the epithet "drunken homosexual" by the deputy prosecutor.

We hold that appellant was deprived of a fair trial when the deputy prosecutor was permitted to indulge in such invective in addressing the jury. Before the jury were two directly contrary versions of what occurred when appellant was arrested—one version stated by appellant, and one version stated by the merchant patrolman. The remark in question not only impugned the veracity of appellant, but it offered an unwarranted explanation for the consideration of the jury as to the most implausible portion of the merchant patrolman's testimony. Counsel for appellant immediately requested a mistrial after the deputy prosecutor's prejudicial remark and later asked for a new trial after the verdict was returned. One of these requests should have been granted.

The judgment and sentence is reversed and the case remanded for a new trial.

HILL, FINLEY, HUNTER, and HAMILTON, JJ., concur.

OTT, C. J. (dissenting)—The majority grant the defendant a new trial because they conclude that the deputy prosecuting attorney, in his closing argument to the jury, committed prejudicial error when he referred to the defendant as a "drunken homosexual."

I dissent for the following reasons:

(1) In *State v. Peeples,* 71 Wash. 451, 459, 129 Pac. 108 (1912), we said:

" . . . While intemperate assertions of opinions not based upon any evidence will never be tolerated, it is none the less in the interest of a sound public policy that prosecuting officers be permitted a reasonable latitude in argumentative deduction from the evidence. . . . "

Accord, *State v. Griffith*, 52 Wn. (2d) 721, 328 P. (2d) 897 (1958); *State v. Brown*, 35 Wn. (2d) 379, 213 P. (2d) 305 (1949); *State v. Perry*, 24 Wn. (2d) 764, 167 P. (2d) 173 (1946).

The use of the descriptive word "drunken" was justified under the evidence. One officer testified that the defendant had been drinking, but that he "could walk." Another testified that defendant had been drinking, but he did not consider him "intoxicated" at the time of the arrest. When this officer was testifying, defense counsel, on cross-examination, made it plain to the jury that defendant had a "drinking problem," as follows: "Q. Mr. Rose has quite a drinking problem, hasn't he? A. Well, in most anyone's opinion why I'd say he was a drinking man, yes."

Defendant's testimony relative to his drinking just prior to his arrest was as follows:

"Q. You had two or three drinks at the Terrace Room on the night in question, December 3rd? A. Yes. Q. Where had you been before that? A. Downtown. Q. Where downtown? A. If my memory is right, I think I had been in Murphy's and I had also been in the, oh, Louis Mondau's. They call it Louie Mondau's Tug Boat. Q. Had you been drinking? A. I'd a few in there, yes. Q. When you were at the Terrace Room, would you say you were under the influence of intoxicating liquor? A. *Oh, I could see where I was going all right; I could walk all right.* Q. You could walk all right? A. You could always feel you could probably drink one more. Q. How much had you had that entire evening, if you recall? How much to drink? A. Oh, I would say maybe seven or eight." (Italics mine.)

Based upon the testimony of the defendant that he had visited three cocktail lounges and had had seven or eight drinks of hard liquor, but "could see" where he was going, and "could walk," and the officers' testimony relative to the defendant's conduct at the time of his arrest, the deputy

prosecutor's inference that the defendant was then drunk was justified.

(2) Assuming, arguendo, that the use of the word "drunken" was not merited by the facts, its use by the deputy prosecuting attorney was not prejudicial. In the light of the vile details of the act of sodomy by mouth being accomplished in the *presence* of the officers, and the sordid evidence with relation thereto, the descriptive adjective "drunken" could not have prejudiced the defendant, or detracted in the slightest degree from the repulsive, degrading, and obscene act which the jury found the defendant had committed.

(3) The characterization of the defendant as a homosexual was likewise justified by the evidence. It is not error to characterize the defendant in a criminal prosecution as the type of person who would commit the offense with which he is charged. In *State v. Brown, supra,* at p. 386, we upheld the prosecutor's reference to a defendant charged with sodomy as a "pervert" for the reason that *"it could be legitimately adduced from the evidence that appellant here was guilty of sex perversion."* (Italics mine.) In *State v. Buttry,* 199 Wash. 228, 250, 90 P. (2d) 1026 (1939), we stated: "Nor is it prejudicial to refer to a defendant as 'a red-handed murderer' where the charge is murder, and the state's evidence strongly tends to establish that the defendant is guilty of the charge." Accord, *State v. Evans,* 145 Wash. 4, 258 Pac. 845 (1927). In *State v. Perry, supra,* we upheld the prosecutor's reference to the defendant in a rape case as a "mad dog" and "beast."

In the instant case, both patrolmen testified that the defendant committed an act of sexual perversion which would clearly justify the characterization of the defendant as a homosexual. In the light of this evidence and the cited decisions of this court, the deputy prosecutor's comment was a legitimate inference from the evidence presented at the trial.

(4) Finally, defense counsel invited the prosecuting attorney to explain to the jury, in effect, why any person in his right mind would continue such a repulsive act of

sodomy, when the headlights of the officer's car were shining on the rear of the defendant's car. The deputy prosecuting attorney's answer to defense counsel's invitation to explain was that the defendant was drunk, and for that reason he was not then acting as would a person in his right mind. When defense counsel's argument invites an answer, "Appellant cannot predicate error upon statements made within the scope of the invitation." *State v. Cunningham*, 51 Wn. (2d) 502, 507, 319 P. (2d) 847 (1958), and case cited. In the light of the defendant's own testimony that, just prior to his arrest, he had had seven or eight drinks of hard liquor, and that of the officers that defendant and his companion committed sodomy in their presence, the statement that defendant was a "drunken homosexual" was well within the scope of the evidence and of the invitation to explain.

In my opinion, the judgment and sentence should be affirmed.

WEAVER, J., DAWSON and RYAN, JJ., Pro Tem., concur with OTT, C. J.